## JOHN WHEELER v. HYMAN LANE.

The second section of the act of the 10th of November, 1802, exempting
from taxation the property of the President and Professors of the Uni-
versity of Vermont, to the value of one thousand dollars, is in force, and
not repealed.

TRESPASS for taking a cow.   Plea, not guilty.
Issue to the court.

The cause was submitted to the county court, upon the fol-
lowing statement of facts, agreed upon by the parties, to wit:

"In this cause, it is agreed, that John Wheeler, at the
'several times hereafter named, was, and is, President of
'Vermont University; that Hyman Lane was, and is, Con-
'stable and collector of taxes, in and for the town of Burling-
'ton; that, on the first of April, 1840, the plaintiff owned
'and possessed one cow, of the value of $25, one horse, of
'the value of $75, and stock of the Bank of Burlington, of
'the value of $1000,—amounting, in the whole, to the sum
'of $1100,—and no other taxable property; that his list for
'that year was

| 'One poll,   | - | - | - | - | - | - | $10.00 |
| 'One cow,    | - | - | - | - | - | - | 1.25   |
| 'One horse,  | - | - | - | - | - | - | 3.00   |
| 'Bank stock, | - | - | - | - | - | - | 60.00  |

'Making his list for 1840,      -      -      -      $74.25;
'and that the plaintiff delivered no list to the listers, but was
'assessed by them as above:—

'That the town of Burlington, in town meeting assembled,
'on the 8th of March, 1841, voted a tax of seven cents on

'the dollar of the grand list of 1840; on which a rate-bill <span style="float:right">CHITTENDEN,<br>January,<br>1844.</span>
'was regularly made, assessing said Wheeler, at the sum of
'$2.47, and delivered to said Lane to collect, with a regular
'warrant to collect the same; and that, by virtue of said
'rate-bill and warrant, on the refusal of President Wheeler
'to pay said tax, the defendant, Lane, took his cow, and
'regularly sold her in satisfaction of said tax :—

Wheeler
v.
Lane.

'That the funds of the University consist, chiefly, of the
'lands reserved for that purpose, in the grants by the state;
'but that considerable donations, in lands, money and books,
'have been made to the University, by private individuals.

'The several acts of the General Assembly of Vermont,
'relating to the University, are made part of the case.

'If President Wheeler is liable, under the laws of this
'State, to the payment of said tax, judgment is to be enter-
'ed for defendant to recover his costs; but if he is, by law,
'exempted from the payment of said tax, then judgment to
'be entered for the plaintiffs, for $15 damages.

'The only question which the parties wish to raise, is, the
'liability of the President of the University to the payment
'of taxes; therefore all matters of form are to be disregarded;
'and if the case stated is not sufficient to raise that question,
'then the parties agree to amend it."

Upon this statement, the court decided that the defend-
ant was guilty, and rendered judgment for the plaintiff to
recover the damages stipulated in the agreement, and his
costs ;—to which decision the defendant excepted.

*C. Adams,* for defendant.

The act of 1779 provides that all males between 16 and
60 shall be set in the list at six pounds, excepting ministers
of the gospel, the president of the college, annual school
masters, and students; and that *all* the estate of ministers
and the president shall be exempt from taxation.    State Pa-
pers, 279.

Act of 1787.    Males between 21 and 60 are subject &c.,
excepting as above; but the amount of property of ministers
and president exempted, is limited to five hundred pounds.
Page 1 0.

Act of 1791, founding a college at Burlington, exempts
all the property of the University, to the amount of one hun-

dred thousand pounds ; and the persons of the officers, students, and servants, are exempted from taxes and military duties.

Act of 1797, provides that all males between 21 and 60 shall be set in the list at twenty dollars, except ministers and students, and exempts the property of ministers to the amount of one thousand dollars.

Act of 1802. The persons, families and estates, to the amount of one thousand dollars, of the president and professors in the University, and the persons of the students, resident graduates, and servants, are exempted from taxes and military duties.

Act of 1819, repeals all exemptions in favor of the property of ministers.

Act of 1825. All persons are set in the list, except students, and there is no exemption of property, except land for schools and other public, pious and charitable uses ; and all other acts are repealed, in pari materia.

From this view of the several acts, it is apparent that the legislature have repealed all exemptions in favor of college officers, and have subjected all male persons to taxation, excepting students.

The only question is, then, whether the legislature has power to annul these exemptions in favor of college officers. The only ground on which the annulling can be resisted, is, that the acts creating these exemptions operate as grants, thereby creating vested rights.

The act of 1802 is not a grant to any one, although corporate powers created by law, and vested in the University, are, by virtue of the act of 1791 ; and if any act is to be considered as a grant, it is this act of 1791. The act of 1802 is not in the nature of a grant—creates no vested rights, and is but the ordinary legislation of the state, exempting, or subjecting, as sound policy may dictate.

It rests on the basis of exemption from the levy of execution, of cavalry horses, and of militia polls, which are varied from year to year. These exemptions create no permanent rights, any more than the bounty on silk or wolves—laws which confer privileges while the laws exist, but which may be repealed at the pleasure of the legislature.

By the existing laws, all males over sixty years, and all

females, are exempted; but no one ever supposed they ac-
quired thereby any vested rights, nor doubted the power of
the legislature to subject them to taxation. The policy of
such laws might well be doubted; but there can be no doubt
as to the power of enacting them.

Neither the act of 1791 nor of 1802 create any rights,
or confer any privileges, beyond the existence of the laws.

Before the establishment of the college, by the act of 1779,
the president and ministers of the gospel were alike exempted
from taxation; and if these exemptions can be regarded as
vested rights, they became so by the law of 1779, as much
as by the act of 1791, or 1802; and yet, the power of
the legislature to repeal these exemptions in favor of minis-
ters, has never been questioned. It will be difficult to draw
any distinction between the rights of ministers and college
officers, and limit the power of the legislature as to one, and
leave it uncontrolled as to the other. Both classes are equal-
ly meritorious, and if one need protection more than the
other, assuredly the ministers are entitled to it.

The college officers can claim no superior rights from the
fact that the act granting these exemptions creates the cor-
poration, and authorizes them to take the charge and man-
agement of the funds of the institution.

The officers are not parties to the grant; and it is not
seen how those who are not parties can avail themselves of
its provisions. It will hardly be contended that the students,
resident graduates, and servants attached to the college have
acquired any vested rights from the act of incorporation, for
the very obvious reason that it is not a grant to them; and
yet the language is as strong in their favor as in favor of the
officers.

If any rights were created by the act of incorporation, they
are rights vested in the trustees, for they only can be regard-
ed as the grantees; and the provisions therein, in favor of all
others, as well the officers as the students and servants, are
but part of the ordinary legislation of the state, which may
be varied, from time to time, as the legislature may think ex-
pedient.

Whatever character the exemptions assume, they cannot
be considered as personal and several rights, to be exercised
by each, severally, but joint, and to be exercised by them

CHITTENDEN, January, 1843.

Wheeler v. Lane.

collectively. Take the case of trustees. If they have any rights, awarded to them, they are joint rights, to be exercised by them collectively, in their corporate capacity of trustees.

If there are any rights created, they are in the nature of a franchise, and can only be exercised by the trustees, collectively, when assembled as a corporation. It would be a novel idea that the servants attached to the institution, have rights vested in them, severally, while the trustees to whom the grant is made, have none.

The argument for these exemptions rests on the supposition, that the corporation of the university is a private corporation. It may be admitted that an act establishing a bank, a manufacturing company, or any other strictly private corporation, is in the nature of a grant, and that the trustees thereby acquire rights vested in them by the act, which the legislature have no power to repeal.

It is equally clear that a public corporation, as a town, county, or a bank, established by the government, on its own funds, and for its own facilities, is subject to the control of the government, and may be repealed at pleasure.

It was on this distinction that the Dartmouth college case was decided. In that case, *all* the funds of the institution were provided by the trustees, or through their agency.

The court held that the character of the funds gave character to the corporation created to manage those funds; and the reasoning that led the court, in that case, to decide that the corporation was a private one, would have led them to decide that the corporation of the University of Vermont is a public one.

This corporation has all the attributes that a public corporation can have. It has its foundation in the beneficence of the state; is endowed by the public lands of the state, and the trustees are appointed to manage the funds of the state. By the act of 1810, they were to be commissioned by the governor, as state officers, and, at one time, were to be appointed yearly by the legislature, as state officers.

The governor and speaker of the house are, *ex officio*, members of the board of trustees, and the corporation are required to make an annual report to the legislature of the state, of their funds and of the condition of the University. The University is declared to be under the special patronage

of the state; it is, in character, and effect, a state institu- <span>CHITTENDEN,</span> tion; its trustees are the servants of the state—stewards of <span>January, 1843.</span> the public beneficence, for the public good of the state; and the legislature have, from time to time, altered the charter as they considered the public good required.

<span style="float:right">Wheeler v. Lane.</span>

There is a further consideration that should have great weight. By the terms of the last act, relating to the college (1828) the legislature have expressly reserved to themselves the right of repealing the act; and if the legislature have the power of repealing the *whole* act, *a fortiori*, they may repeal a part of it; and having, by the act of 1825, made provisions inconsistent with the exemptions in the act relating to the college, these exemptions must be considered as annulled.

The act of 1825 should have a liberal construction, inasmuch as it is founded in an equality of burthens. There is no good reason why the President of the college should be exempted from taxes to which all others are subjected. If his salary is not a sufficient compensation for his services, let it be increased. The people of this state would hardly be willing to pay the amount of the officers' salaries by a yearly tax; and yet this exemption, as far as it extends, is identical with a tax. There is a material difference in the mode of making an addition to his salary. In the one case it is a charge on the funds set apart for the purpose; but, in the other, is an addition to the individual burthens of the people.

The policy of state legislation has been constantly tending to an equality of burthens. At first, exemptions were liberally granted; but the legislature seems to have struggled for a more equal distribution, until, at length, all are subjected to common burthens.

All distinctions are particularly odious to the people of this state. It is on this ground they have abolished all exemptions in favor of ministers. And it is to be presumed that the repeal of the exemptions of college officers was on the same principle.

*Lyman & Marsh* for plaintiff.

I. The exemption of the President and other officers of the University from taxation, by the act of 1802,—Sla. Comp. L. 586,—is in the nature of a grant to the corporation; and the legislature has not the power to repeal it.

1. The act of 1802 is an addition to the original charter, and, therefore, to all intents and purposes, a part of it; subject to the same rules of construction, and conferring rights and immunities equally sacred and binding upon the government, as the franchises vested by the act of incorporation. 3 Story on the Constitution, 262.

2. The corporation, created by the act of 1791—Sla. Comp. L. 581—and the several additional acts, is a private corporation, and, therefore, all legislative grants to it, whether of funds or franchises, are irrevocable. *Dartmouth College.* v. *Woodward,* 4 Wheat. 518. 4 Cond. R. 519, 526, 562. *Allen* v.*McKeen,* 8, 9,10,11. 3 Story on Cons. 260, 262. *Trustees Caledonia Co. Gram. Sch'l* v. *Burt,* 11 Vt. R. 632.

3. And even though it be a public corporation, yet a grant of this nature is irrepealable. 2 Kent's Com. 275.

4. The exemption from taxation, secured by the act of 1802, though enuring to the benefit of certain officers of the University, is a grant of a right, valuable to the corporation, because it amounts to a contract on the part of the legislature to contribute to the salaries of those officers a sum equal to their respective taxes; and thus enables the corporation to reduce the salaries, by a corresponding amount.

II. The legislature has never attempted to repeal the act of 1802.

1. It was not repealed by any specific act,—by the general repealing act of 1839, or by the repealing clause of the listing act of 1825, now in force.

2. Nor does the last mentioned clause repeal it by implication, because the operation of that clause is confined to " acts and parts of acts, ascertaining the principles on which ' the list of this state shall be made, and directing listers in ' their office and duty." This is the uniform title of all the laws passed on the subject of the general list, from 1797 to 1825; and the legislature undoubtedly referred only to the acts bearing this common title; and it is a well established principle, that, if a particular thing be given, or limited, by a preceding statute, it shall not be taken away, or altered, by the general words of a subsequent one.

III. The exemption from taxation to the amount of $1000, refers not to the actual value of the property, but to the sum at which the property should be set in the list, by the listing law then in force.

The opinion of the court was delivered by <span>CHITTENDEN,<br>January,<br>1843.</span>
HEBARD, J.—Two questions are involved in this case.
The first is, in relation to the *power* of the legislature to <span>Wheeler<br>v.<br>Lane.</span>
repeal that section of the statute of 1802, which exempts the
property of the officers and students of the University of
Vermont from taxation.

The other is, in relation to the fact whether, in case the
legislature possesses that power, it has been exercised.

The last inquiry, if settled one way, settles the whole case,
as it is unimportant, for the purposes of this trial, what pow-
ers the legislature possesses, if those powers have not been
exercised.

The fifth section of the act of 1791, founding the Univer-
sity of Vermont, provides that " the persons of all officers,
servants and students, belonging to said University, shall,
during their continuance there, be exempted from taxes and
military duties."

The second section of the act of 1802, which is "in ad-
dition to, and in explanation of," the act of 1791, among
other things, provides, " that the persons, families, and
estates of the president and professors, lying and being in the
town of Burlington, to the value of one thousand dollars to
each of said officers, shall be freed and exempted from all
rates, taxes, military services, working at highways, or other
such like duties and services."

If this last provision of the law is now in force, the judg-
ment of the county court is correct; for, although this sec-
tion only exempts property to the value of one thousand
dollars, still, if the tax is, in part, made upon property
exempt by law, the whole tax is void. The important in-
quiry, then, is, has the legislature, by any subsequent enact-
ment, taken away this exemption ? The usual way of repeal-
ing a statute, is to pass a law for that purpose, expressly
taking away the provisions of the previous law. But it is,
sometimes, done by passing a law inconsistent with the
provisions of the previous law ; but this would usually hap-
pen only when the subsequent law was in relation to the
same subject matter as the previous law. The act in which
this exemption is contained, is in relation to the "founding
of a University at Burlington." The subsequent laws, which,
it is insisted, operate to repeal this, are the general laws of

CHITTENDEN,
January,
1843.

the state, " defining the principles upon which the grand list shall be made," and have not, directly or indirectly, any connection with this law, and make no allusion to it, in any of its provisions.

The act of 1791 and the act of 1802 are in relation to the same subject matter, and, consequently, whatever there is in the former, inconsistent with the provisions of the latter, is thereby repealed.

The exemption in the first act extends to all the taxes of the officers belonging to the University. The subsequent act of 1802 does not, in express terms, repeal the 5th section of the former act, but it contains a provision in relation to the same subject matter, which is inconsistent with it, and, therefore, the legal effect is, to repeal it. Instead of exempting the officers of the University from all taxes, it only exempts them from paying taxes on property to the value of one thousand dollars. But as there is no subsequent act on the same subject, which interferes with this exemption, it is reasonable to conclude, that the legislature have never intended to repeal or modify this section of the act of 1802. We think that such is not the legal effect of any of the general laws on the subject of taxation.

As this conclusion disposes of all there is in this case, we do not find it necessary to pass upon the other question.

The judgment of county court is affirmed.