## Case No. 17,390.

### WELLS v. CENTRAL VERMONT R. R. CO. et al.

[14 Blatchf. 426.] [1]

Circuit Court, D. Vermont. March 21, 1878.

DISSOLUTION OF INJUNCTION—TAXATION OF RAILROADS — CONSTITUTIONAL LAW — RESTRAINING COLLECTION OF TAXES—JURISDICTION OF FEDERAL COURTS.

1. Reasons stated why a motion to dissolve an injunction should be considered and disposed of on its merits, rather than that the injunction should be continued until the hearing, even if its maintenance then should be doubtful.

2. The provisions of the act of the legislature of Vermont (Laws Vt. 1874, Act No. 1, p. 16) providing for the taxation of the property of railroads, are not invalid by reason of the fact that lands improved by having a railroad built on them are not made taxable until they have been so improved ten years.

3. Whether section 3224 of the Revised Statutes of the United States, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," applies to a suit in a federal court to restrain the collection of a state tax, quere.

[Cited in Crawford v. Linn Co., 11 Or. 491, 5 Pac. 742.]

[This was a bill in equity by Samuel Wells against the Central Vermont Railroad Company and others.]

Benjamin F. Fifield, for orator.
Alfred G. Safford, for defendants.

WHEELER, District Judge. The motion of the defendants for a dissolution of the injunction heretofore granted in this cause, has been heard on bill, answer and argument of counsel. The injunction restrains the collection of municipal taxes assessed, under the law of Vermont providing for the taxation of the property of railroads, upon the property of the Vermont and Canada Railroad Company, in possession of the Central Vermont Railroad Company. Laws Vt. 1874, Act. No. 1, p. 16. Some of these taxes were assessed in 1875, and the time limited by law. within which they may be collected. will soon expire.

It was suggested, in argument, for the orator, that, if the injunction should be dissolved, he would be without remedy, and that, on that account, it should be continued to the hearing, even if its maintenance then should be doubtful. There would be some force to this suggestion, beyond what it now has, if the case was likely to or could stand any differently at the hearing from what it does now; but it is not likely to and cannot stand much differently. The only ground on which it is claimed that the taxes should not be collected is, that the law itself is unconstitutional and invalid. That question arises upon the face of the law, so that there are no issues of fact to be tried by proofs that might be presented differently upon the evidence then from what they can be

1 [Reported by Hon. Samuel Blatchford. Circuit Judge, and here reprinted by permission.]

now; and it is not apparent but that all questions of law involved have been as well presented now as they can ever be. And, besides, it is doubtful whether, if the injunction should be continued so as to prevent collection within the time limited, the taxes could be collected afterwards, although, ordinarily, a statute of limitation will not run upon an act restrained by injunction. For, in respect to taxes, the rate-bill and warrant are in the nature of an execution, differing, however. in so far that they cannot be renewed, and that they do not issue from, and are not returnable to, any court, where any answer to the fact that the time within which they were operative had elapsed could be shown. The question involved does not seem to be very intricate or difficult, and, in view of all these various considerations, it seems most just that it be disposed of on its merits, according to the usual course with such motions.

In behalf of the orator, it is not claimed but that the real estate of railroads is taxable, nor but that it is taxable in the mode by which that of the railroad reached is taxed by the law in question; but it is claimed that, on the face of the law, all are not taxed, and that the legislature has not the power thus to discriminate. If this claim was well founded, it is not easy to see how any of the laws of the state by which taxes are laid are valid. For, the only foundation of the claim is, that the taxes of the orator and his associates are made greater than they should be, by leaving others who should pay to go clear of paying any; and the same is true as to all other tax-payers as well as to them. That the property on which none are paid is of the same kind as that upon which the taxes complained of are assessed, can make no difference. If these tax-payers have the right to say that they will not pay their taxes because all other owners of the same kind of property are not required to pay like taxes, then all other tax-payers would have the same right. and all lawful taxation would fail. until the system should be made so perfect as to reach all property and all persons in the same proportion—a result not soon to be even hoped for. By the constitution of the state, the mode of laying taxes is left wholly to the legislature. It is merely said (Const. 1793, c. 1, art. 9) that "every member of society hath a right to be protected in the enjoyment of life, liberty and property, and, therefore, is bound to contribute his proportion towards the expense of that protection;" and that, "previous to any law being made to raise a tax. the purpose for which it is to be raised ought to appear evident to the legislature to be of more service to the community than the money would be if not collected." Under the constitution. exemptions similar to that complained of in this law have always been in force. Up to the year 1820 none but improved lands for pasturage, tillage, or mowing, or which were stocked with grass and within enclosure, were taxed. leaving all unimproved and unenclosed lands without taxation; and not only this, but

improved lands were not taxed until they had been improved two years. This exemption was very much like that complained of. By the law in question, lands improved by having a railroad built on them are taxed, but not until they have been so improved ten years. The improvement is greater, and the exemption longer but far less extensive, than those mentioned. So, persons have always been exempt from poll taxes until they arrive at a certain age, and almost always after they have passed certain ages. And, while horses, cattle, sheep and swine have been always taxed, the young of each, up to certain ages, have been left without being taxed. And the legislature has frequently, in its discretion, for the sake of encouragement to laudable enterprise, made particular exemptions, important in character, when considered in connection with the taxpaying property left—like the exemption of the whole township of Wheelock from all public taxes (Morgan v. Cree, 46 Vt. 773); the exemption of the Vermont Central Railroad from taxation (Vermont Cent. R. Co. v. Burlington, 28 Vt. 193); the exemption of certain persons (Wheeler v. Lane, 15 Vt. 26); and many others of like character. The right to make these exemptions has stood unchallenged until the present case, and the want of it is not consistent with the idea of the sovereignty that belongs to a state. So firmly settled is the power of the legislature of a state to make exemptions from taxation, that, when a franchise is granted by a legislature, free from taxation, it is not within the power of it to afterwards withdraw the exemption by repealing the law that created it, or by any other legislation. Gordon v. Appeal Tax Court, 3 How. [44 U. S.] 133; State Bank of Ohio v. Knoop, 16 How. [57 U. S.] 369; Vermont Cent. R. Co. v. Burlington, 28 Vt. 193. The power to make such exemptions, unless restrained by constitutional provisions, must rest with the legislature of every state, to be exercised in its own discretion. As is said in the opinion of the court, in State Bank of Ohio v. Knoop [supra], by McLean, J.: "The taxing power may select its objects of taxation." "Now, the exemption of property from taxation is a question of policy, and not of power."

Then, further, strictly speaking, this is not an absolute exemption of any property, if, in fact, it can be said to be any exemption. In the form of the enactment it is styled an exemption of the real estate of railroads until ten years from the time when traffic commences throughout their lines; but the form does not affect the substance. In effect, the legislature, in selecting objects of taxation, took railroads having ten years of growth, and of that class it exempted none. But, if the effect be stated, that they took railroads and exempted new ones during the first ten years of their existence, then it is only a qualified exemption, that will pass away with the prescribed time, as to all of them. And, still further, whatever it is called, it does not operate to create any discrimination in favor of or against any rail-

roads, old or new. All those that had been in full operation ten years, and so were taxable under the law when it was passed, had realized their exemption of at least ten years in extent already, and those that had not could not by the law be taxed till they had, so that, altogether, the exemption, if not uniform, has existed so as to make a discrimination in favor of instead of against the one of which the orator is a stockholder, and those of its time.

From whatever point of view the subject is looked at, it seems clear, that no constitutional right of the orator has been infringed upon by this legislation and the proceedings under it.

There is another ground urged by the defendants why this injunction should not be maintained, and that is, as it is claimed, because such a proceeding is prohibited by the laws of the United States. The Revised Statutes of the United States (section 3224) provide, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." Taken literally, this would prohibit such a proceeding as the one under consideration from being had in any of the state courts as well as in the federal courts. But, congress has no control over state courts, in respect to state taxes, and it is not to be presumed that it intended to reach beyond where its power extended, but to the contrary, and, therefore, that broad construction cannot prevail. It has exclusive control over the federal courts and federal taxation, and no one does or could claim but that this statute would apply to those courts, in respect to that subject. It also has exclusive control over the federal courts in respect to all other subjects, including proceedings concerning state taxation, when involved in those courts, and there is no very plain reason why this statute should not be held to apply to them, in respect to that subject, also. The reasons for not interfering in this way with state taxation are equally strong with those for not interfering with federal taxation, if not stronger. Congress has been careful to provide that the federal courts shall not interfere by injunction with proceedings in state courts. Rev. St. U. S. § 720. This statute in respect to interfering with taxation is legislation in the same direction, and it would seem reasonable, when congress had full power to restrain interference by the federal courts with state taxation, and used language broad enough to fully cover that restraint, and that construction is in accordance with the spirit and tendency of prior legislation, to presume that the intention was to accomplish that object. If this statute had been placed among those defining the powers of the federal courts, there would not be much, if any, doubt but that it was intended for a restriction upon those courts in all cases. But it is placed among the statutes relating to federal taxation, and that affords some ground for the argument that it was only intended to apply to such. As the scope of this statute is somewhat doubtful, and the propriety of restraining the collection of the tax by continuing the

injunction has been fully argued on the general ground, it has been thought better to examine into those grounds rather than turn the question upon the construction of the statute merely. On those grounds it appears to be clear that the injunction should be dissolved.

If ultimately it should turn out that the taxes are wholly illegal, the corporation of which the orator is a member can recover them back. And, if that corporation refuses to do so, and thus to protect his rights, and he has any legal and equitable right to his share, it seems quite probable that he can have his share decreed to him. The injunction is dissolved.