COLCORD QUIMBY, JR., *v*. VERMONT CENTRAL RAILROAD COMPANY.

*Interest of rail road corporation in land taken for their road. Obligation to maintain fences. Care required in management of locomotive engines. Evidence to charge defendants for want of care.*

The charter of the Vermont Central Rail Road Company provides, that the company, upon complying with the conditions upon which they may take land for the use of their road, shall be " *seized and possessed of the land.*" This does not make them owners of the fee, but gives them a right of way merely. Hence, although the charter makes no provision in reference to the obligation to maintain fences upon the line of the road, the general law of the state, in reference to the obligation of adjoining land owners to maintain the division fences between them, does not apply, but the obligation to maintain the fences rests primarily upon the company, and until they have either built the fences, or paid the land owner for doing it, a sufficient length of time to enable him to do it, the mere fact, that cattle get upon the road from the land adjoining is no ground for imputing negligence to the owners of the cattle.

The owner of cattle, which stray upon a railroad track by reason of the insufficiency of a fence, which the rail road company are under obligation to maintain, and who brings an action upon the case against the company for killing the cattle by means of a locomotive engine, is entitled to have the degree of care, which the company are bound to exercise, defined in a more strict manner, than by instructing the jury, that the company are bound to the exercise of such care, as a man of ordinary prudence would use, who was the owner of both the rail road and the cattle; but if such instructions are given to the jury, the defendants cannot complain.

It is not incumbent upon the plaintiff, in such case, to prove, in opening his case, the customary and usual conduct and practice in the management of locomotive engines and trains on rail roads under similar circumstances; but if the defend- ants desire the benefit of the rules of engineering, under such circumstances, for their exculpation, they may show the custom, and if not unreasonable,—of which the jury must judge,—it will avail them.

TRESPASS ON THE CASE for want of care by the defendants' ser- vant in the management of their locomotive engine, whereby the plaintiff's mare and colt were killed. Plea, the general issue, and trial by jury, December Term, 1850,—COLLAMER, J., presiding.

On trial the plaintiff gave evidence tending to prove, that in July, 1849, he was the owner of a mare and colt, which were in the pos- session of his father, Colcord Quimby; that Colcord Quimby resi- ded on a farm in Sharon, through which the defendants' rail road was located and constructed; that in constructing their rail road the defendants had excavated a part of his barn yard, and he had erected on that side a temporary fence of poles, which he regarded as suffi- cient; that the mare and colt were placed by Colcord Quimby in this yard; and that, in his absence, they escaped through or over this fence on to the defendants' rail road, where, through the neglect or want of care of the defendants' engineer, in the management and control of their locomotive engine, upon the rail road, the mare was killed, and the colt was so injured, as to be of little or no value. No evidence was introduced, tending to show the customary and usual conduct and practice in the management of locomotive engines and trains under similar circumstances.

The defendants gave in evidence the record of the proceedings and judgment of the county court, upon an appeal taken by Chester Baxter from the decision of the commissioners for appraising the damages occasioned by the location of the defendants' rail road through the farm in question,—of which Baxter was then the owner, and which had since been purchased of Baxter by Colcord Quimby, —from which it appeared, that commissioners were appointed by the county court to re-appraise the damages, and that they reported, that they assessed the damages to said Baxter at $650,00, upon the repre- sentation of the defendants, among other things, that good and suf- ficient fences would be built and maintained by the defendants upon both sides of the rail road, but that, in case such fences were not to

be built and maintained by the defendants, then the farther sum of $540,40 should be added to the assessment, for the purpose of building and keeping in repair suitable fences, as the land owner should choose, upon the line of the road through the farm ; and it appeared by the record, that the county court, November Term, 1847, rendered judgment in favor of Baxter, upon the report, for the amount of both sums, with interest,—being in the whole $1304,24. The defendants also gave evidence tending to prove, that their engineer was using diligence and care at the time the plaintiff's mare was killed.

The plaintiff gave evidence tending to prove, that immediately after the rendition of the judgment of the county court, evidenced by the record above mentioned, the defendants commenced proceedings at law and in chancery, by which the collection thereof, of the defendants, was superseded and enjoined, and so remained until June, 1850, when a settlment was effected between the defendants and Baxter, and the amount of the judgment was paid to him by the defendants, except a sum agreed to be discounted therefrom.

The plaintiff requested the court to charge the jury, that it was the duty of the defendants, by their servants, to exercise the highest degree of care, and to erect and maintain a sufficient fence upon the line of their road, to prevent animals from passing from the adjoining land on to the rail road.

The defendants requested the court to charge the jury ;—1. That under and by virtue of the said appeal, and proceedings, judgment and execution thereon, the duty of making and maintaining the whole fence, through the farm in question, along the rail road, devolved upon Baxter and his grantees of the farm, and that the defendants were absolved from any liability or duty to make or maintain the fence. 2. That the owner of the farm was bound to make and keep such a fence, as would have kept the mare and colt from the rail road; and that, if they escaped from his inclosure on to the rail road, over or through the said line of fence, it was at his own risk, and the plaintiff was not entitled to recover in this action for the injury, which happened to them in consequence of their so being upon the rail road. 3. That if the court should hold, that the owner of the premises and the defendants were under equal obligation to make and maintain a sufficient fence along the rail road, through

said premises, each one half, yet, if the mare and colt came upon the rail road for want of such sufficient fence to restrain them, the plaintiff was not entitled to recover. 4. That the defendants were bound to exercise only ordinary care, such as is ordinary and customary in the use and management of such engines and trains on rail roads generally; and unless the defendants were shown not to have exercised that kind and degree of care in this instance, they were not liable in this action. 5. That if the accident occurred in any part or degree through any negligence or fault on the part of the plaintiff, through his father, who was keeping and had care of the mare and colt, or through any fault of said animals, the plaintiff was not entitled to recover.

The court charged the jury, that in July, 1849, before the judgment of the county court, above mentioned, was paid, it was no more the duty of the defendants than of Colcord Quimby to erect and maintain a fence between the adjoining lands possessed by them respectively,—the same being the duty of both; that the defendants were bound, in the direction, management and control of their locomotive engine, by their engineer and servant, running on their rail road, to the exercise of ordinary prudence and care, such as a man of ordinary prudence and care would exercise in such business and service,—such, for instance, as a man of ordinary prudence would use, who was the owner of both the road and the mare; and that, if the jury found, that there was a neglect, by the defendants' engineer, of that degree of care, in the management and control of the defendants' locomotive engine, and thereby the plaintiff's mare was killed, the plaintiff was entitled to recover; but that, if they found that ordinary care was exercised by the engineer, their verdict should be for the defendants.

Verdict for plaintiff. Exceptions by defendants.

*Tracy, Converse & Barrett* for defendants.

The defendants were in no legal fault, in respect to the fence. The statute being silent on the subject, the parties stand on common law rights and liabilities. At common law adjoining owners are not obliged to fence, but each is bound to keep his beasts from the other's close. 3 Kent 438. 5 Greenl. 356. 4 N. H. 36. 6 Mass. 90. Vin. Ab., Fences A. Dyer 372 *b*.

All legal and equitable duty was taken from the defendants by the award, appeal and judgment, made part of the case. The grantee of Baxter is in privity of estate and interest, and bound by the proceedings affecting the premises, the same as Baxter, had he remained the owner. The best that could be said for the plaintiff is, that the beasts were there by the mutual fault of the parties; the plaintiff, being implicated and chargeable with that fault, cannot recover for an injury, to which that fault contributed. *Flower* v. *Adam*, 2 Taunt. 314. *Cogswell* v. *Baldwin*, 15 Vt. 404. *Washburn* v. *Tracy*, 2 D. Ch. 128. *Noyes* v. *Morristown*, 1 Vt. 353. *Briggs* v. *Guilford*, 8 Vt. 264. Even if it were the defendants' duty to build the fence, it does not follow, that the plaintiff could put his beasts in a yard insufficient to restrain them, regardless of the danger of their escaping and exposing themselves to injury, and thus cast the whole hazard of damage upon the defendants. Under the evidence it should have been submitted to the jury, whether the plaintiff was in fault in putting the beasts into that yard, and whether that contributed to the happening of the injury.

The defendants were entitled to the charge asked in the fourth request. The managing of an engine and train requires and combines scientific and practical skill, and, under the state of circumstances and incidents often occurring and likely to occur, becomes matter of rule and usage, to be applied and followed as the emergency may require. The idea of exercising *common and ordinary* care involves the necessity of doing, in the given case, as is commonly and ordinarily done in similar circumstances. The plaintiff, alleging the want of care, must show affirmatively all that is necessary to enable the jury to determine the truth of the allegation. This can only be done, by showing what facts constitute and indicate care, under the circumstances.

The illustration, explaining and applying the rule, was an extraordinary one, and tended to mislead the jury.

*W. C. French* for plaintiff.

1. Whatever may have been the relation between Baxter and the defendants, it does not affect the plaintiff; he can only enforce his remedy against the defendants, and they must seek their remedy over, if they have any, against Baxter.

2. In July, 1849, at the time of this accident, the defendants had no right to the land appropriated to their use across the premises of the plaintiff's father, and were mere trespassers; as such, they were liable for all the consequences of their acts. *Bloodgood* v. *Mohawk & Hudson R. Road Co.*, 18 Wend. 9. *Presb. Soc.* v. *Auburn & Rochester R. R. Co.*, 3 Hill 567. *Dater* v. *Troy Turnp. & R. R. Co.*, 2 Hill 629. Acts of 1843, pp. 43–46, § 7.

3. Even if the defendants had done all that was legally required of them by their charter, to become legally possessed of the land, it was their duty to have fenced the road for the protection of the public. We do not claim this by virtue of any statute, but under the well known principle of the common law, that a man must so use his own property and rights, as not to interfere with the rights of others. 1 Sw. Dig. 552. 2 H. Bl. 350.

4. The statute in relation to division fences does not apply to such cases. The defendants' charter differs from the New York charters. It is very doubtful, whether the legislature intended to convey, by this charter, a fee in the land; most probably the intention was simply to convey an easement. 4 Paige 553.

5. The charge in reference to the degree of care required was in accordance with the defendants' request, except the illustration, which makes more in favor of the defendants, than of the plaintiff. A case might occur, where the defendants would be liable under the the general principle, as stated, but not under its illustration.

6. The plaintiff was not bound to introduce evidence as to the custom and practice of rail road corporations, in the management of trains. The question of negligence is always one of fact; and it was distinctly submitted to the jury. *Leicester* v. *Pittsford*, 6 Vt. 245.

7. The defendants were not entitled to the charge asked in the fifth request. There was no evidence tending to prove any negligence on the part of the plaintiff's father. The plaintiff could only be holden to the exercise of ordinary care. If the plaintiff were in some fault, it does not dispense with the exercise of such care, as the law requires, on the part of the defendants. *Butterfield* v. *Forrister*, 11 East 60. 2 Taunt. 314. 1 Sw. Dig. 550. 4 Paige 553. 2 D. Ch. 128.

The opinion of the court was delivered by

REDFIELD, J. 1. The court have not deemed it necessary to go into the inquiry, in this case, whether, upon the facts stated in the bill of exceptions, the defendants' right to the land, where the injury occurred, had so vested, that they might rightfully occupy the same. The very action pre-supposes, that the company were rightfully occupying the land ; else the action must be *trespass*, and not *case*.

2. In regard to the obligation to fence the land, we think the rule adopted by the court below was as favorable, as the defendants could ask. That is treating them as owners in fee of adjoining lands. This is the view taken of the subject by the New York courts. In the rail road charters in that state it is provided, that the company may take *the fee* of the land. The charter of the defendants' company, although copied, in the main, from the New York charters, adopts different language, as to the defendants' title, —only saying, that they shall be " seized and possesssed of the land ;" that is, seized of such an estate as is necessary for their uses,—a right of way. This form of expression seems to have been adopted by design, and with a view to limit the estate of the company strictly to their necessities. Indeed, we do not well see, how the legislature could assume to vest in the company any greater estate, than their necessities required.

This being so, then the general laws of the state, as to adjoining land owners, would not apply, and the defendants' charter being silent in regard to the obligation to fence, it becomes a question of reason and justice, growing out of the relations of the parties. And in this view it would seem, that no two persons could give different answers to the inquiry. The company have taken a strip through the land. Shall the proprietor have only the value of the estate taken from him, without regard to the form in which it is taken, the form in which it leaves the remainder, and the risks of losses and the necessity of fencing? An affirmative answer to such an inquiry would be not a little startling to the moral sense ! The truth is, the *expense* of fencing rests primarily upon the company,—whether as a part of the land damages, or as a necessary precaution to running their engines, with safety, as is said by the Chancellor of New York in *The matter of the Rensselaer & Saratoga R. R. Co.*, 4 Paige

XXIII.    50

553, is immaterial. And whether the whole expense of fencing is to be assessed in the land damages, as was done in this case, or half, as was held in the last case cited, or none at all, on the ground, that, from the necessity of the case, the obligation to fence must rest upon the company, is not necessary now to inquire. It is sufficient to say, that, until the company had either built the fence, or paid the land owner for doing it, a sufficient length of time to enable him to do it, we do not think, that the mere fact, that cattle get upon the road from the lots adjoining, is any ground of imputing negligence to the owners of the cattle.

3. We think, then, there being no testimony in the case tending to show want of ordinary care on the part of the plaintiff, in regard to the horses injured, the court properly refused to charge upon that point.

4. The charge in other respects seems to have been altogether unobjectionable, and the illustration not objectionable, so far as the defendants are concerned. If the jury had given a verdict for the defendants, it might have been more questionable. That illustration is one, which has often occurred to me, as applicable to the ordinary cases of injuries to property, through alleged want of care, and in most cases just. It is but requiring one to do by others, as he would in the same circumstances do by himself, or wish others to do by him. It is but a paraphasis upon the exposition of Jones in his treatise on Bailments, where he defines common diligence to be that degree of diligence, which common men exercise in their own affairs. But we do not think the illustration entirely applicable to the present subject,—for the reason stated at the bar, that the company might, as matter of expediency, choose to endanger the life of their own beast, rather than check their train. But if they did that to another's property, they should make good all loss to the owner and to all others injured by such rashness. But this is matter, of which the plaintiff, only, has reason to complain.

5. We do not think, it was incumbent upon the plaintiff, in opening his case, to show, that by the laws of rail road companies, the defendants were guilty of want of ordinary care. If he saw fit to trust that question to the good sense and judgment of the jury, he might. It is not one of those mere scientific subjects, whose laws,

like that of botany and geology, or medicine, or surgery, are matters of settled principle and accurate knowledge. If the defendants desired the benefit of the rules of engineering for their exculpation, they might show the custom; and if not unreasonable, of which the jury must judge, it would avail them.

There being no error in the case, the judgment is affirmed.