## CHARLES H. CONGDON v. THE CEN. Vt. R. R. CO.

*Railroad Fences. Neglect to Build. Liable. Contributory Negligence. R. L. ss. 3407, 3416.*

1. The plaintiff's horse escaped from his adjoining meadow directly on to the track, and was there killed by a passing train. The defendant had neglected to maintain a lawful fence. *Held*, that the company was liable, although the owner knew of the defect in the fence, that his horse was breachy, and although there was no neglect in running the train.
2. The doctrine of contributory negligence is not applicable.
3. It is not only the duty of the company to fence its track, but also to *maintain* the fence.

ACTION for killing the plaintiff's horse. Heard on a referee's report, September Term. 1880, Rutland County, Ross, J., presiding. Judgment for the plaintiff.

*F. E. Woodbridge*, and *L. L. Lawrence*, for the defendant.

The plaintiff, knowing that the fence was defective, was guilty of contributory negligence in turning the horse into the meadow. *Hance* v. *C. & S. R. R. Co.*, 26 N. Y. 428; *R. R. Co.* v. *Shimer*, 17 Ind. 296; *Ellis* v. *L. & S. R. R. Co.*, 2 H & N. 424; *Ill. Cen. R. R. Co.* v. *McKee*, 43 Ill. 119; *R. R. Co.* v. *Wright*, 13 Ind. 213; *R. R. Co.* v. *Couffman*, 28 Ill. 513; *Toledo & W. R. R. Co* v. *Thomas*, 18 Ind. 215; *Northern*

*Ind. R. R. Co.* v. *Martin*, 10 Ind. 460 ; *Dunning,* v. *C. & N. R. R. Co.*, 18 Wis. 28. The plaintiff was guilty of contributory negligence. Shearm. & Red. Neg. ss. 42, 459 ; *Lane* v. *Crombie*, 12 Pick. 177 ; *Parker* v. *Adams*, 12 Met. 418. *See Mead* v. *B. & L. R. R. Co.*, 52 Vt. 278 ; *Corwin* v. *N. Y. & Erie R. R. Co.*, 13 N. Y. 42.

*Joel C. Baker*, for the plaintiff, argued substantially as the court hold, and cited R. L. ss. 3409, 3412 ; *Gilman* v. *R. R. Co.*, 12 Am. L. Reg. 555 ; *Holden* v. *R. R. Co.* 30 Vt. 297 ; *Nelson* v. *Vt. & Ca. R. R. Co.*, 26 Vt. 717 ; *Clement* v. *Canfield*, 28 Vt. 302 ; *McCowell* v. *R. R. Co.*, 37 Barb. 195 ; *Cook* v. *Transportation Co.*, 1 Denio, 91 ; *Tero* v. *R. R. Co.*, 22 N. Y. 209 ; Shearm. & Red. Neg. ss. 28, 31 ; *Newton* v. *R. R. Co.*, 29 N. Y. 383.

The opinion of the court was delivered by

Ross, J. The referee has found, that the plaintiff's horse escaped from his meadow, adjoining the railroad operated by the defendant, over the fence of the defendant, separating the meadow from the bed of the railroad, by breaking down a portion of a length of board fence, and passing upon the track, was killed by a passing train; and further, that the fence was was not a legal fence, at the time and place when and where the horse passed through or over. He has also found that there was no evidence submitted tending to show any want of proper care and diligence on the part of the defendant in connection with the running of the train by which the horse was killed. From these facts alone, under the statute and decisions of this court, the right of the plaintiff to recover cannot be denied. In 1849, the legislature passed act No. 41, entitled "An act in relation to railroad corporations," which embodied most of the present existing statutes that have a general application to such corporations, their management, and operation. Among other provisions was that of section 44, imposing the duty upon such corporations of fencing their respective roads. The provisions

of this section have never been repealed, but by the subsequent revisions have been embraced in separate sections, between which some provisions subsequently enacted have been interposed. This section provided that " Each railroad corporation shall *erect* and *maintain* fences on the sides of their roads (so far as the same shall be necessary) of the height and strength of a division fence as required by law." This is followed, by provisions in regard to farm and road crossings. and cattle guards. Then the section continues, " Until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon, if occasioned by want of such fences and cattle guards , and after such fences and cattle guards shall be duly made, the corporation shall not be liable for any such damages unless negligently or wilfully done." The section renders, riding, leading or driving any horse or other animal upon such road and within such fences and guards other than a highway and farm crossings, without the consent of the corporation, an offense by which the offender becomes liable to the corporation for a penalty and also for all damages occasioned thereby. The next section embraces the case, when the corporation had settled with the land owner for building and maintaining such fences. The act of 1850, No. 51, defines the time when such corporations shall construct such fences, and on their neglect and upon and after notice, allows the land owner to construct such fence and recover therefor from the corporation. The provisions of these acts are now embodied in R. L. ss. 3407 to 3413,. The charters of most of the railroad corporations theretofore granted contained a provision compelling them to construct and maintain fences upon the sides of their road.

In *Quimby* v. *Vt. Cen. R. R. Co.*, 23 Vt. 387, it is held that without such a provision in the charter the obligation to fence the road rests primarily upon the corporation, and that such being the case, "until the company had either built the fence or paid the land owner for doing it, a sufficient length of time to enable him to do it, we do not think that the mere fact that cat-

tle get upon the road from the lots adjoining is any ground of imputing negligence to the owners of the cattle." This is said, in affirming the judgment of the County Court on an exception to the refusal to charge, in compliance with its fifth request—"that if the accident occurred in any part or degree through any negligence or fault of the plaintiff, or through any fault of the animals, the plaintiff was not entitled to recover." This is in effect and substance holding that so long as the corporation is at fault, in discharging the primary duty resting upon it, to fence the road, the doctrine of contributory negligence is inapplicable, in a suit to recover for injuries to cattle by a passing train.

In *Hurd v. Rutland & Burlington R. R. Co.*, 25 Vt. 116, the plaintiff sought, among other things, to recover for injuries to an ox and a cow. The charter imposed upon the company the duty "to *build* and maintain a sufficient fence upon each side of their road through the whole route thereof." The road was located through the plaintiff's pasture. The company had erected the fences required, and constructed an over-crossing, agreeably to the award of the commissioners. At this crossing the defendant had attempted to put bars into its fences, which the plaintiff forbade it to do, claiming that he was entitled to have gates put in, and the crossing was unfenced against the plaintiff's field. No evidence of negligence, or want of care in operating the trains causing the injuries, was shown. The ox and cow were injured on the crossing. The defendant requested the court to charge that if the cattle at the time of the injuries were not in the charge of any one, but were at large upon the premises of the defendent, and were there killed without any negligence or wilfulness on the part of the defendants or their agents, no recovery could be had. The court declined this request, but made the defendant's liability turn upon whether the crossing was left open and unfenced at the request of the plaintiff, or it was so constructed by the defendant without the plaintiff's consent. In disposing of the case, the court say: "If the cattle escaped, or were found upon this railway through a want or defect

of fences, which the defendent should have erected and maintained, the injuries sustained would be consequent of that wrong, and the defendants in some way would be responsible for the damages sustained." Again, speaking of the provision in the charter imposing the duty to build and maintain fences, it says: " This provision of the act imposed a duty, or an obligation upon the defendant which did not exist at common law. The object of the enactment was obviously to afford protection to the adjacent owners of land, and to relieve them, so far as a fence of that character will have the effect, from the perpetual and onerous charge of keeping their cattle and animals from the premises and railway of the defendants, and to cast the duty upon the corporation. In other words, the defendants, under the provisions of that act, are required to build and maintain a fence for the purpose of keeping cattle of owners of adjacent land from the premises and track of the road; and as a necessary consequence, if the cattle of the owners of adjacent land are found upon the road, and are injured by the defendants through their negligence to make and maintain a sufficient fence, they are chargable with the risk, and are subject to such damages as may be sustained thereby. The principles of law applicable to such a case were well considered in the case of *Sharrod* v. *N. Western Railway Co.*, 4 Welsb. H. & G. 584, in which PARKE, B., observed: 'That if the cattle had an excuse for being on the road, as if they had escaped through defects of fences which the company should have kept up, the cattle were not wrong doers, they had a right to be there, and their damage is a consequent damage from the wrong of the defendents in letting their fences be incomplete or out of repair, and may accordingly be recovered by action.'" The case was reversed upon the manner, in which, under the evidence, the question, whether the defendant's failure to erect bars or gates at the crossing, was the fault of the plaintiff, was submitted.

The same volume of the reports, p. 150, contains the case, *Jackson* v. the same defendant, in which it is held that the duty to build and maintain fences is one which the company owes to

the owners of adjoining lands alone and to cattle rightfully upon such lands, and contains a full statement and discussion of the duty imposed by this provision of the charter, and a full statement of the common law on the subject of fencing. It is held that this duty, imposed by the charter, is entirely separate and beyond that existing at the common law. These are leading cases in this State, and the decisions have never been questioned or doubted. They are quoted with approval by other State courts, and by nearly all the elementary writers on the subjects discussed. In Pierce on Railroad Law, p. 409, the same doctrine is maintained. His language is: "The company, when required by statute to maintain fences along its track, is liable for injuries to cattle, which, being lawfully on adjoining land, pass thence on to the track through its failure to perform the duty so imposed, although it is not chargeable with any negligence in the management of its trains at the time of the injury." The author cites a large number of cases supporting the doctrine thus stated. The same doctrine is held in *White* v. *The Concord R. R. Co.*, 30 N. H. 188 ; and in *Horn* v. *Atlantic & St. Lawrence R. R.*, 35 N. H. 169, in both of which the injuries were at crossings which were without bars or gates. The plaintiffs had turned the animals into the adjoining fields, knowing there was nothing to prevent the animals from passing on to the track at the crossings. But it is needless to cite authorities. They are all one way, so far as observed, wherever the common law in regard to fencing prevailed, which requires the owner of cattle to restrain them from wandering or straying from their enclosures by proper fences, and where by statute the duty of fencing the track of a railroad had been cast upon the railroad company. In all such States the statutes imposing this duty upon railroad companies as against owners of adjoining lands, are in contravention of the common law in regard to fencing, and are construed as determining the duty and liability of such companies, for injuries done to animals upon the track, through the failure of the company to discharge this duty of properly fencing its track. This is so held where the statute goes no

farther than to impose the duty of erecting and maintaining such fences. Nor has it been held in such States, so far as we have observed, that the owners of such lands were affected in their rights of recovery for injuries sustained because they turned the animals injured into fields adjoining the railroad, knowing that the company had been remiss in the discharge of its duty in respect to erecting or maintaining the proper fences. But our statute has gone further in this respect. It has not only imposed the duty to erect and maintain legal fences on each side of the railroad upon the company owning or operating the road, but it has declared that "until *such fences* are duly made, the corporation shall be liable for all damages, etc., if occasioned by want of *such fences.*" It is contended that by using the words "duly made," this liability extends only to the original erection of a legal fence, and does not follow the failure of the corporation to *maintain* the fence. But the duty to maintain the fences in a legal condition, is as clearly imposed as the duty of constructing them. When it declares that the corporation shall be liable for all damages if occasioned by the want of *such fences,* it clearly means, legal fences, fences answering to the duty imposed, and not fences once answering to that duty, but at the time of the injury no fence at all, or less than a legal fence. This is the more apparent by the next clauses in the original act, exempting the corporation from all liability from injuries, "after *such fences* are duly made unless negligently or wilfully done." The statute embraces the entire subject. It imposes the duty, fixes and limits the liability, and prohibits the use of the road for the passage of animals, under a penalty. It is apparent that it intended that the liability should be coextensive with the duty, and cease when the duty was discharged. The duty to *maintain* a legal fence is as urgent as the duty to erect one. The same reasons and policy apply to each.

But it is contended that the other facts found by the referee, that the plaintiff knew of the defect in the fence, and that his horse was restive, and more or less breachy, defeats his right of

recovery. But if the above is the correct construction to be placed upon the statute, the liability is thereby fixed, and the doctrine of contributory negligence has no application. *Mead* v. *Burlington & L. R. R. Co.*, 52 Vt. 278. But if the clause of the statute casting the liability upon the defendant does not apply to its failure to maintain the fence in a legal condition, the fact that the plaintiff knew of the defendant's failure to discharge its legal duty in this respect, does not defeat his right of recovery, as is shown in *Hurd* v. *Rutland & Burlington R. R. Co.*, *supra*, and the two cases cited from N. H. Reports. The first named case was decided upon the clause in the charter which imposed the duty, but did not declare the liability resulting therefrom. Nor did the statute, under which the New Hampshire decisions were made, do more than impose the duty. The cases on this subject are made to turn upon whether the animals injured were, as against the corporation, rightfully upon the track; that is, whether they were there through the fault or neglect of the corporation, as regards the plaintiff. At common law the owner of animals was bound to restrain them within his own enclosure whatever their character, or was liable for all damage done by them. By this statute, railroad corporations are bound, to the extent of a legal fence, to ward the cattle of the owners of adjoining lands from the track, and are liable for injuries occasioned through a failure to discharge this legal duty. They cannot say that they shall be relieved from this liability if the owner of the adjoining land has a horse more or less breachy and restive, and turns him into an adjoining field, and been injured, *non canstat* that the horse would have escaped if the corporation had discharged its legal duty. It is not found that the character of the horse contributed at all to his escape. It might be surmised that it did. But contributory negligence is not to be inferred, but is to be found as a fact, unless such other facts are found as constitute, in law, contributory negligence. These facts do not, especially, when encountered by the fact that the horse escaped at a point where the fence was defective. It might be the duty of this court to recommit the

report to the referee to find whether the plaintiff was guilty of negligence contributing to the escape of the horse, and his consequent injury, if that were a controlling element in the decision. But if the construction we have placed upon the statute is correct, the defendant's liability is determined by the statute. Certainly, the plaintiff owed no duty to the defendant, which forbade or restrained his right to use his meadow for pasturing the horse. He had the right to turn out such a horse upon his meadow, with the liabilities of the statute resting upon him, if he escaped, over the legal fence of the defendant, but with the same liabilities upon the defendant if the escape was occasioned by the want of such fence.

Judgment affirmed.

NOTE BY ROSS, J.—Since the opinion was written, the case of Cressey v. Northern Railroad, 29 Alb. Law Jour. 392, to appear in 59 N. H. R., has come to my attention, holding that the doctrine of contributory negligence is inapplicable in such cases. The opinion clearly and ably discusses the question, and presents the authorities holding the same doctrine.