## The Rutland Railroad Company *vs.* George T. Chaffee, et al.

October Term, 1898.

Present: Ross, C. J., Taft, Rowell, Tyler, Munson, and Thompson, JJ.

Opinion filed January 2, 1899.

*Ejectment by Railroad Company.*—As this court has formerly held that a land owner cannot maintain ejectment against a railroad company, when he has consented to the entry and the construction of the road, or when he knew of it and for years made no objection nor claim for compensation, so it must now be held that such an owner cannot defend ejectment by the company.

*Reversioners' Damages.*—A railroad company may maintain ejectment against defendants who at the time of the condemnation proceedings were reversioners following a life estate then in being, although their damages were never appraised, especially when all of them for more than sixteen years after becoming of full age have omitted to make any claim for damages.

*Survey when Void for Uncertainty.*—Condemnation proceedings are not void for uncertainty by reason of designating the starting point as "in the west line of James Barrett Jr.'s land," when the road had been already surveyed and located and was being occupied, and when the metes and bounds make it clear that the point intended was at the intersection of the Barrett line with the side line of the railroad location.

*Monuments Control Courses.*—In land surveys, monuments control courses even to the extent of reading west for east, especially when the courses as given would enclose no land, but if followed according to the monuments will enclose the land in controversy.

*Bagley* v. *Morrill*, 46 Vt. 94, distinguished.

*No Abandonment.*—The plaintiff's right to a portion of its location was not abandoned nor lost by its giving another company a right of way thereover and permitting the latter to build and use a track thereon; for the sensible construction of the facts is that such possession was the possession of the plaintiff, especially as the plaintiff's intention not to abandon the property is indicated by its requiring its general lessees to "maintain the boundaries of the property," and by the fact that such lessees received rent of the defendants for their occupation of the land in question, although under an agreement that the defendants' rights should not thereby be prejudiced.

*Adverse Possession.*—One cannot acquire a right by adverse possession as against a railroad company, since V. S. 3745.

*Betterments.*—Although a declaration for betterments must be filed in the county court in case a judgment becomes final in that court, when the cause passes to the supreme court the better practice is to await the disposition in that court; for until then it cannot be known that the question of betterments is material.

EJECTMENT.   Trial by court at the March term, 1898, Rutland county, *Start*, J., presiding.   On the facts found judgment was rendered for the plaintiff for the seizin and possession of the premises, and $100 damages and costs. The defendants excepted.

The court found that the road was surveyed and located, and the survey certified and recorded in the proper offices, and that the road was constructed and had been ever since operated, and that commissioners were appointed who appraised and awarded the land damages, although some of the damages, as it is stated in the opinion, were never paid.

*T. W. Moloney* and *J. C. Baker* for the defendants.

*W. W. Stickney* and *J. G. Sargent* for the plaintiffs.

TAFT, J.   Four objections are made to the action of the county court.

(1)  It is claimed that ejectment will not lie to recover an easement, as held in *Judd* v. *Leonard*, 1 D. Chip. 204.

This is no doubt true in regard to an easement pure and simple, like the right to cross another's land, to draw water from one's spring, etc.   In such case, the one entitled to exercise the right has no title to the land, nor spring, and no right to exclusive possession of it.   He can exercise his easement only, and for any obstruction therein he cannot maintain ejectment.   The right of the plaintiff to the land in question is an easement; the only purpose for which it had a right to take it, was for a right of way.   *Quimby* v. *Vt. C. R. R. Co.*, 23 Vt. 387.   That such an interest cannot be taken on execution against the company is stated by *Redfield*, C. J., in *Hill* v. *Western Vt. R. R. Co.*, 32 Vt. 68. We also recognize the rule that a judgment in ejectment

settles the plaintiff's title to, and right in, the land, and establishes his right of property. *Marvin* v. *Dennison*, 20 Vt. 662; *Hunt* v. *Payne*, 29 Vt. 172. It is not necessary to entitle one to recover in ejectment, that his title should be one in fee simple. It is sufficient if he is seized and possessed of the land for any purpose.

It was provided in the charter of the railroad company that constructed the Rutland road that when it took land by right of eminent domain the land should be appraised by commissioners and when the damages were paid "then said corporation shall be deemed to be seized and possessed of such lands so appraised by said commissioners." Acts 1843, No. 54, § 7. The corporation under the circumstances stated in the findings of fact became invested with the same title that would have accrued to them had the damages been paid. It became invested with the title of the land subject to the equitable lien of the owner for his damages. The plaintiff, therefore, is "seized and possessed" of the land, i. e., "seized and possessed of such an estate in the land as is necessary for its uses, a right of way," as in *Quimby* v. *Vt. C. R. R. Co.*, 23 Vt. 387.

Although the right of the plaintiff company is but an easement and not a fee, it is not precluded from having the sole and exclusive possession of the land, while in the exercise of that easement. The railroad company must from the very nature of its attitude, in order to give security to its passengers and workmen and the enjoyment of the road, have at all times the right to the exclusive occupancy of the lands taken, and to exclude all concurrent occupancy by the former owner for any purpose. *Jackson* v. *R. & B. R. R. Co.*, 25 Vt. 150; *Conn. & Pass. R. R. Co.* v. *Holton*, 32 Vt. 43; *Troy & B. R. R. Co.* v. *Potter*, 42 Vt. 265. The judgment in an action of ejectment is, that the plaintiff recover the seizin and possession of the premises. Such was the judgment rendered below. Ejectment is a proper remedy in the case before us. In no other manner

can a railroad company recover possession of its road if by chance it should be dispossessed.

(2)   The defendants contend that if the action of ejectment can be maintained, the plaintiff is not entitled to recover for the Pierpoint tract.   The plaintiff company or its predecessor surveyed and located their road including within its location the land in question.   Pierpoint derived title from a deed given him by Ambrose L. Brown, who owned one-half of the premises in his own right, with a life estate in the other half.   The remainder in the latter half belonged to the heirs of his body, and they by quitclaim deed have conveyed to the defendants' predecessors, provided the deeds conveyed the land in question.

One of the deeds, Defendants' Ex. 2, did convey such rights as the grantors then had in the lands in question.

Ambrose L. Brown conveyed the land in controversy to Robert Pierpoint, from whom it was taken by condemnation proceedings and Pierpoint was paid his appraised damages as the sole owner of the premises.   The children of Brown owned the estate in reversion, and when the land was condemned three were of full age and the others became so within ten years thereafter.   All lived in the village of Rutland and knew of the location and construction of the road.

Ambrose L. Brown, the natural guardian of the minor children, made the preliminary survey of the railroad and was the company's resident engineer when it was constructed.   The life estate of Ambrose terminated 22 September, 1865, and the reversioners were then, if not before, entitled to claim their damages.   The damages to the reversionary interests were subject to appraisal at the time the road was located and constructed, under Acts 1846, No. 22, § 3, for there was a life estate to be appraised as well as the reversionary interests.   From the time of the condemnation proceedings in 1848 until 1873, a period of more than twenty-five years, and sixteen years after all

were *sui juris*, no claim was made by any one of the reversioners in respect to damages.

In the latter year they quitclaimed their interests to the defendants' predecessors in title, and the latter went into possession, but could gain no rights by adverse use. V. S. 3745. This case is governed by former decisions of this court, in which it has been held that the land-owner cannot maintain ejectment nor trespass when he has consented to the entry upon his land and the construction of the road, or knew of it and made no objection and permitted the road to be used for years without making claim for compensation. *McAuley* v. *R. R. Co.*, 33 Vt. 311; *Knapp* v. *McAuley*, 39 Vt. 275; *Kittell* v. *R. R. Co.*, 56 Vt. 96. The same rule has been applied when consent and knowledge did not appear, and even when the land-owner forbade the entry. *Kendall* v. *M. & C. R. R. Co.*, 55 Vt. 438; *Adams* v. *R. R. Co's*, 57 Vt. 240; *Bridgman* v. *R. R. Co.*, 58 Vt. 198; *Robinson* v. *R. R. Co.*, 59 Vt. 426. A case "on all fours" with this is *Austin* v. *R. & B. R. R. Co.*, 45 Vt. 215. It differs from this case in one respect only. In the Austin case, the moiety and life estate in the other moiety were conveyed to the road by deed. In this case, such interests were taken by condemnation. It was held that the reversioners could not maintain ejectment to be let into joint possession. It logically follows that if they cannot maintain ejectment, the railroad company, which is entitled to exclusive possession, can maintain the action to eject them. What remedy, if any, the reversioners or their grantees have to recover their damages is a question not before us.

(3) The third point is that the description of the land taken from Robert Pierpoint under condemnation proceedings is void for uncertainty. The starting point is in "the west line of James Barrett Jr.'s land." Rather indefinite to be sure, but, "*certum est quod certum reddi protest.*" At the time of condemnation, the railroad had surveyed and located the road and were then in occupancy

of the land, and it is clear from the metes and bounds given that the point of beginning was in the southerly line of the railroad location on the west side of Barrett's land, the intersection of the south line of the railroad with the west line of Barrett's land, a point as certain as one could well be.   The principal objection in this respect is that in describing the land the fourth and fifth courses are given as N. 88° 30′ *west*, and N. 82° 30′ *west*, when they should have been given as *east*; but monuments are given such as the Williams house, the east line of Barrett's land, and East Creek.   The metes and bounds, if run as given in the deed, would enclose no land whatever, but if run according to the monuments given, enclose the land in controversy.   There is ample authority for reading the words *west* as *east*, in *Barnard* v. *Russell*, 19 Vt. 334.   When there is a conflict between courses and distances, on the one hand, and monuments which are mentioned in the description of the deed, on the other, the courses and distances must yield to the monuments, but in order to apply this rule the existence and location of the monuments must be given or proved by parol evidence.   This is not in conflict with the case of *Bagley* v. *Morrill*, 46 Vt. 94, for in that case no monument that is shown to conflict with the courses and distances, is mentioned in the deed.   The description of the land is sufficient.   It would be absurd after fifty years' possession by the railroad company to hold that it acquired no title, by reason of such error.

(4)   The last point is, that "the facts clearly show an abandonment by the plaintiff of the right of way of the Delaware & Hudson tracks if it ever had any."   This is not the correct view to take of the facts.   The road was surveyed and located and the company entered into possession.   The award states that the company had "entered upon and occupied the lands," and were evidently then occupying them.

Soon after the road was located, the company gave the Delaware & Hudson Canal Co's predecessor a right of way over its location upon the southerly side, and this right of way was exercised upon the track built by the latter company in 1852. The facts found show it did not appear that the plaintiff company ever occupied any part of the location south of the Delaware & Hudson Co's tracks, but it does not appear but that they had a right to do so, if they desired. It would certainly be inconvenient for it to be used by any one except the Delaware & Hudson Co. in connection with their right of way, although it might be. The facts show that the defendants erected a dock or platform with side tracks for conveniences in transacting business with the Delaware & Hudson Co. This possession was not adverse, and even if it was, no title could be acquired by the defendants as against the plaintiff, the statute of limitations not running against it. V. S. 3745. We treat this land as within the surveyed location of the plaintiff's road, and the possession of the Delaware & Hudson Co. of their track within the surveyed location, as the possession of the plaintiff. It is the only sensible construction to be given the finding of facts. It is clear the plaintiff never abandoned the land now claimed. The defendants began their occupation after the plaintiff's lease to the Central Vermont Receivers in 1870, and when the lease was renewed in 1891 the lessors required the lessees "to maintain the boundaries of the property." After 1891, the defendants paid rent to the Central Vermont, and although this agreement was made, and the rent paid, with the understanding that any rights the defendants might have in the premises were not to be surrendered nor invalidated by such payment nor agreement, it shows the plaintiff had not abandoned its claim to it, which was asserted immediately after the surrender of the lease in 1896, when these proceedings were brought. This point must be

ruled in favor of the plaintiff, none of the points raised being tenable.

*The judgment of the county court is affirmed.*

After the judgment was affirmed, the defendants were permitted to file in the supreme court a declaration for betterments.  For authority to so file a declaration in this court, see *Beckley* v. *Willard,* 13 Vt. 533, in which cause it was done, and the case remanded for a trial upon the general issue on the questions relating to betterments. While a declaration for betterments must be filed in the county court in case a judgment becomes final in that court, the better practice, in case the ejectment cause passes to the supreme court, is to await the disposition of it in that court, before filing a declaration, for not until that time can it be known that one is necessary, or that the question of betterments is material.