SUSAN B. SOWLES, MARGARET P. SOWLES and E. A. SOWLES *vs.* GUY L. BUTLER.

October Term, 1898.

Present: ROSS, C. J., TAFT, TYLER, MUNSON, START and THOMPSON, JJ.

Opinion filed April 28, 1899.

*Deed or Mortgage.*—Stearns conveyed land to Bellows, and as a part of the same transaction Bellows leased the same premises to Stearns for ten years at an annual rent of $26.61, giving Stearns the right at the end of any year, no rent being unpaid, to purchase the premises for $266.14. Within one month thereafter Stearns conveyed a small tract of the land by warranty deed to a third party, and not long after conveyed the rest of the premises by warranty deed to one Hubbell, to

whom he also assigned the lease, and in said deed warranted the premises free from incumbrance "except to said Bellows of two hundred dollars." The lease was afterwards paid and satisfied, and so entered thereon by Bellows himself. *Held*, that Bellows acquired no title to the disputed tract by virtue of the deed from Stearns save the title of a mortgagee.

*Pierce* v. *Brown*, 24 Vt. 165, distinguished.

*Assignment—Master's Finding.*—The master was justified in finding that an assignment operated to pass the assignor's interest to the assignee although the assignment was not recorded until after the commencement of the suit.

*Adverse Possession.*—The grantee of land in adverse possession of another is not a *bona-fide* purchaser, but takes subject to the equities of the party in possession.

*Deed.*—One may convey his interest in real estate even if he have no title of record.

*Evidence.*—The endorsement of satisfaction on a lease, written by the orators' grantor, was properly admitted as evidence that the lease was paid, especially as the endorsement was followed by the delivery of the lease to the party interested.

*Southeast* read for *southwest,* herein following *Rutland R. Co.* v. *Chaffee,* 71 Vt. 84.

*Evidence.*—An unexecuted deed and note prepared by the orator as executor was properly received in evidence against the estate upon the question whether the estate was then making claim to the disputed tract.

*Adverse Possession.*—The master having found that the defendant and his grantor held the premises adversely, the mere fact that the eaves and cornice of the orators' building have always projected over the right of way and premises in dispute a distance of from twelve to eighteen inches does not entitle the orators to an injunction against the defendant's interfering therewith, for in case of such interference the orators have an adequate remedy at law.

*Adverse Possession.*—The fact that the orators' tenants occupied a portion of the disputed land under leave and license from the defendant had a tendency to establish that the defendant was then in possession claiming the lands adversely, and the fact was admissible, for the tenants were not tenants of the orators as to the disputed tract, and were not questioning their landlord's title.

*Evidence.*—The grand list showing that the property was assessed to the defendant's grantor was admissible, not as evidence of possession but to rebut the orators' testimony that the taxes were paid by them.

*Witness—Other Party to Contract Dead.*—A grantor in the defendant's chain of title was not "a party to the contract or cause of action in issue and on trial" within the statute which excludes such party from testifying when the other party is dead.

*Evidence.*—Declarations of persons occupying the orators' premises and using the disputed tract of land, that they did so by permission of the defendant's grantor, were admissible as characterizing their acts of occupation and as a part thereof.

CHANCERY. Heard at the March term, 1898, Franklin county, on pleadings, master's report, orators' exceptions thereto and motions to suppress and recommit, before *Rowell*, Chancellor, who overruled the motions, accepted the report and dismissed the bill with costs. The orators excepted.

Following is an extract from the report: "The premises in controversy consist of a small tract of land situate in the rear of a brick building that stands on the highway running easterly and westerly through Fairfax village, and between the rear of said brick building and a small stream known as Mill brook, and of a right of way nine feet wide between said brick building and the building next westerly thereof, (which is the store owned and occupied by the defendant), running back from the highway a distance of fifty feet. The brick building was erected some fifty years ago and the premises have been ever since and are now occupied by the orators, or some of them, or their tenants, and by those through whom they claim to derive title. They, or some of them, also claim title to the strip of land in the rear of the brick building and to the right of way above referred to, as appurtenant to and a part of the premises on which the brick building stands. The defendant, and those through whom he claims to derive title, and their tenants, have on the other hand for a long period of years occupied the premises next westerly, on which the defendant's store building stands as aforesaid; and the defendant claims title to the premises and right of way in dispute as appurtenant to and a part of the land owned by him. The brick building has a frontage of about thirty-six feet and is about forty-two feet in depth. The brick-store lot and the strip of land in dispute are bounded easterly by lands of the M. E. church of Fairfax, on which is a line of sheds built close to the easterly line of the land in dispute. The dimensions of the land in dispute are about seventy by ninety feet."

As to number one of the sixteen claimed errors of the

master mentioned in the opinion, the finding was that said Hubbell on September 15, 1886, assigned the lease to said A. J. Sowles; that the assignment was duly executed and acknowledged but not recorded in the town records of Fairfax until September 24, 1897, after the bringing of this suit and the master found, if he might so find as a conclusion of fact, that by virtue of said assignment all Hubbell's right, title and interest under and by virtue of the lease became vested in said Sowles.

As to number seven of the claimed errors the master found, that whether the word were southeast or southwest the description would in neither event include any portion of the premises in dispute, but would include the brick store.

As to number eight of the claimed errors the master found, that in November, 1878, the orator Edward A. Sowles, in his own handwriting, drafted a note, and mortgage securing the same, and sent them to A. D. Farnsworth to execute, and in this mortgage used a description militating against his position in the present case.

*E. A. Sowles* for the orators.

*Ballard & Burleson* for the defendant.

TAFT, J. The orators' title, if any, to the disputed land was derived through Hiram Bellows, and they claim he had title through certain deeds:

(1) From Weaver and wife to A. J. Soule, 7 October, 1851.

No title can be derived from such source, as the description in the deed does not include any portion of the disputed tract.

(2) Rufus Stearns, warranty deed to Hiram Bellows, 1 November, 1853.

The latter's rights under the deed depend upon its character,—whether absolute, or, conditional by way of mortgage. It was a warranty deed in form, but no doubt can be entertained, upon reading the report of the master,

but that it was in fact, a mortgage, and in his findings he so treats it. It is the only construction we can give the facts reported. Stearns conveyed the disputed tract to Bellows, and, as a part of the same transaction, Bellows leased the same premises to Stearns for ten years, at an annual rental of twenty-six and sixty-one one-hundredths dollars, giving Stearns the right at the end of any year, no rent at the time being unpaid, to purchase the premises for two hundred sixty-six and fourteen-one-hundredths dollars. The latter sum, evidently, was the amount of a loan and the annual rental, twenty-six and sixty-one one-hundredths dollars, ten per cent. upon the principal. Within one month thereafter, Stearns conveyed a small tract of the land,—between three and four square rods, by warranty deed to some person in trust for the Methodist society. In December of the following year, he conveyed the rest of the premises to one Hubbell, by warranty deed, and on the same day assigned the lease from Bellows to said Hubbell. In the deed to Hubbell, Stearns warrants the premises free from incumbrance, "except to said Bellows, of two hundred dollars."

The master finds that on 19 March, 1864, the lease to Stearns from Bellows was fully paid and satisfied and was so entered on one of the original duplicate leases by Bellows himself. It is beyond question, therefore, that Bellows acquired no title to, nor interest in, the disputed tract by virtue of the deed from Stearns, dated 1 November, 1853, save the title and interest of a mortgagee.

(3) A. J. Soule's deed to I. N. and G. H. Soule, 5 May, 1854, and

(4) I. N. and G. H. Soule's deed to Bellows, 15 December, 1855.

In respect to these two deeds, the orators claim that the disputed tract is included in the description, for this reason; —the land is described as "being about one-eighth of an acre of land, etc. . . bounded northwardly, northeastwardly and northwestwardly, by land owned by Rufus Stearns;

and eastwardly, by the Methodist meeting house lot; and southwardly, by the highway."

The orators claim that by this description, the grantees cannot take "about one-eighth of an acre" unless they take the disputed tract, being a portion of the Stearns land; that in order to get their "one-eighth of an acre," they must take a part of the land then belonging to Stearns. Their claim in this respect is true. The master finds that the brick-store lot contains about one-sixteenth of an acre. That is the area of the lot as bounded in the deed. The description in the deed must be governed by the boundaries and not by the usual expression so common in conveyances, —"being about," etc. It is clear the description cannot be construed as including any of the Stearns land. Monuments control courses, distances, and general terms, used in the description of lands in deeds, and the rule is always applicable when it effectuates the intention of the grantors as shown by the deed. *Fullam* v. *Foster*, 68 Vt. 590, and many Vermont cases therein cited.

The authority cited by the orators to maintain their claimed construction of the deed is *Pierce* v. *Brown*, 24 Vt. 165. That case is not analagous in any respect to this. In that, the general description was, "containing about forty acres of land." The line which created the uncertainty was, "thence east on M. Pendleton's south line to Hiram Brown's land." Pendleton's south line reached Brown's land in two places, and the court said, "the calls of the deed can be answered and the land included or excluded on an equally reasonable construction of the deed." If the line terminated at the first corner of the Brown land, the conveyance was of thirty-two acres only; if at the second corner, it included forty-one acres. The court, therefore, in construing the deed, used the expression, of "about forty acres," and gave effect to it so as to answer all the calls of the deed and manifestly carry into effect the intent of the grantor to convey about forty acres. In this case the

boundaries of the land conveyed cannot be extended beyond the lines of the Stearns land.

After A. J. Soule conveyed the orators' store and lot to I. N. and G. H. Soule and the latter conveyed to Bellows, A. J. Soule bought the premises owned by the defendant, including the tract in question, and the orators claim that the tract in question, being included in the descriptions in the deeds from A. J. Soule to I. N. and G. H. Soule and from the latter to Bellows, passed to Bellows when A. J. Soule subsequently bought the disputed tract,—that the conveyance to A. J. Soule fed the estoppel created by the covenants in his deed to the grantors of Bellows. This well-established rule invoked by the orators, cannot aid them, for the land in dispute was never conveyed by Soule to Bellows, as we have above held that the deed covered none of the disputed land.

We are further confirmed in our view that the deed from Stearns to Bellows, 1 November, 1853, was a mortgage, from the fact that at subsequent periods, Bellows took from the then owners of the premises, three different mortgages of the same land that Stearns conveyed to him—it is improbable that Bellows would accept a mortgage of lands that he at the time absolutely owned, to secure a debt due him—and that subsequently he executed a warranty deed of the same premises to one Bingham, and then, having acquired some farther mortgage interest in the premises, he quit-claimed the premises, including the right of way, to one Farnsworth. Bingham and Farnsworth were owners of the premises in the defendant's chain of title. It is, then, beyond dispute that if Bellows did acquire any interest in the Stearns land by virtue of Stearns's deed, 1 November, 1853, he virtually conveyed such interest away, more than thirty years since.

The orators claim that the master made sixteen errors in his rulings as to evidence and findings of fact, and we will notice them in the order in which they are stated in the orators' brief.

(1) The facts reported fully justified the finding of the master that by the assignment from Hubbell to Soule the former's interest in the premises passed to the latter.

(2) The orators claim that Brush's title, derived from the assignment and quit-claim of Hubbell, could not affect the title of the oratrix, Susan B., as she was a *bona-fide* purchaser from Dewey, a like *bona-fide* purchaser at the marshal's sale.

It is enough to say in this connection, that, as we construe the deeds from the marshal to Dewey and from Dewey to Susan B., they do not include the land in dispute. But if they did, the land, at the time, being in the adverse possession of another, the grantee would not be a *bona-fide* purchaser, but would take subject to the equities of the one in possession. See Roberts's Dig. 538, under the head, "Possession, Effect of as notice."

(3) The deed from Soule to Brush was properly admitted. The objection that he had no title nor interest of record, if true, was not tenable. He could convey any interest he had in the premises if his right and interest were not of record.

(4–5) The indorsement on the back of the lease written by Mr. Bellows was properly admitted as tending to show that the lease was fully paid. It was in the nature of an admission by him, written with his own hand, and, followed by a delivery of it to the party interested, was competent evidence against him.

(6) The assignment of the lease by Hubbell to Soule was properly admitted for the purpose of showing that Hubbell's interest was conveyed to, and vested in, Soule.

(7) As to authority for reading *southeast* as *southwest*, see *Rutland R. Co.* v. *Chaffee*, 71 Vt. 84. There was no error in this respect.

(8) The unexecuted deed and note prepared by the orator, Edward A., was properly in evidence and was pertinent upon the question, whether Bellows's estate was making claim to the disputed tract. If it was admissible against

the executor of Bellows's estate, it was properly in the case. And it does not appear that it was used to the prejudice of the rights of the oratrix, Susan B., if it was objectionable in that respect, which it is unnecessary for us to decide.

(9) The deed from Brush to Bellows of "all the land described in a deed from Rufus Stearns to Hiram Bellows" was pertinent upon the question whether the same land was conveyed by both deeds.

(10–11) The master did not err in finding the facts stated in points ten and eleven, for there was testimony in the case tending to establish such facts, and we cannot revise his findings.

(12) The orators claim that the master erred in finding the defendant or his grantors held the premises adversely, because the orators and their grantors had been in the adverse possession of a part of the premises,—i. e. the land covered by the eaves, cornice and steps of the brick store, etc.

The master finds, in substance, that the defendant and his grantors held the premises adversely; but the eaves and cornice of the brick store building have always projected over the right of way and premises in dispute, a distance of from twelve to eighteen inches.

The right of the orators to maintain the eaves and cornice, under this finding of the master, cannot be interfered with by the defendant. No injunction against the defendant is necessary to protect the rights of the orators in respect to the eaves and cornice; for any interference therewith by the defendant, the orators will have ample remedy in an action of trespass, and the bill may be dismissed without prejudice to the orators' rights thereto.

(13) It is unnecessary for this court to point out testimony tending to show an adverse use of the premises by the defendant and those under whom he claims. The record is full in that respect. There can be no question in regard to it.

(14) If the orators' tenants in the brick store occupied the disputed land for any purposes, under leave and license of the defendant or his grantors, it would have a tendency to establish that the defendant was then in possession, claiming the lands adversely. It does not appear that the orators' tenants of the brick store ever had any right from the orators to occupy the disputed tract or that the orators ever pretended to lease to their tenants in the brick store any rights in the disputed land. The rule invoked by the orators might apply in case the orators' tenants were leasing from the defendant what they had already leased from the orators, and were already enjoying and possessing under them; but such is not the fact. They leased the orators' store and in addition and outside of the orators' lease to them, leased some rights in the defendant's land adjoining.

(15) This question as to the construction of the conveyances by which the brick store passed to Bellows has already been disposed of by the holding that no part of the Stearns land passed under the description of "about one-eighth of an acre of land with the brick building thereon standing."

(16) It is claimed that the master erred in admitting the testimony tending to show that the property was assessed to Farnsworth. The objection made to its admission was that the grand list was no evidence of possession of the land. The testimony was not admitted for that purpose, but to rebut the testimony of the orators that the taxes were paid by them.

As it is for the claimed errors already mentioned that the orators insist the report should be recommitted, and as we have found no error heretofore, it is unnecessary to further consider the motion to recommit.

The orators' moved to suppress certain parts of the testimony; but we think the motion was properly overruled.

(1) They claim that Brush was an incompetent witness, under the statute which excludes one who is a party to the

contract or cause of action in issue and on trial, when the other party is dead.  Brush was a party in the defendant's chain of title, but was in no sense a party to the contract or cause of action in issue and on trial.  He was competent notwithstanding the statute.

(2)  The second point under the motion to suppress has already been disposed of by points four and five relating to the evidence.

(3)  The report does not show the admission of any hearsay testimony referrred to in the motion to suppress the declarations of the persons who occupied the brick store, while they were occupying it and when they were using the disputed tract of land, that they did so by permission of Farnsworth, was admissible.  Their declarations characterized their acts of occupation and were part thereof.

> *Decree reversed and cause remanded with a mandate that the bill be dismissed without prejudice to the orators' rights to maintain the eaves and cornice of their buildings described in their bill.  In all other respects the decree is affirmed and remanded.*