THE VERMONT CENTRAL RAILROAD COMPANY *v.* THE TOWN
OF BURLINGTON.

*Exemption of the Vermont Central Railroad Company's property
from taxes. Liability of towns for taxes improperly assessed.*

The provision in the 17th section of the act incorporating the Vermont Central
Railroad Company, that its property and effects shall be exempt from taxes, limited, in its application to real estate, to such as the company were authorized to
take by proceedings *in invitum.*

Application of this limitation to the facts in the present case.

The plaintiffs having, under protest, paid to the collector of the defendants the taxes
assessed upon their property which was exempt from taxation, can recover back
of the defendants only such of the taxes as were collected for their benefit, and not
the state, county and state school taxes, which the defendants had collected only
as agents, and had paid over as directed by statute.

ASSUMPSIT for money had and received, money paid, &c., and
trial by the court, November Term, 1855, upon the following
agreed statement of facts.

On the 15th of June, 1854, S. W. Taylor, who was then the
constable of Burlington, had in his hands rate bills and warrants
for the collection of several state, state school, county, town and
highway taxes assessed against the plaintiffs in the town of Burlington. He had then levied upon and advertised property of the
plaintiffs, to satisfy said taxes and his fees for collecting them. On
that day, the plaintiffs paid the amount of said taxes and fees to
Taylor, under protest. Said taxes were afterwards, and before
this suit was brought, paid over by Taylor as directed by the various rate-bills and warrants in his hands.

These taxes were made up on various lists of the plaintiffs and
Clark & Paine, made up by the listers of Burlington, in the years
1851-2-3.

The various pieces of real estate described in said lists, were the
property of the plaintiffs in fee, until August, 1852, when they
were conveyed by the plaintiffs to Clark & Paine, in trust, to
secure certain sureties of the plaintiffs, and in 1853 said lands
were assessed to Clark & Paine, as trustees, and, with one exception, are within or adjoining the line of location of the plaintiffs'
railroad in the town of Burlington, over which the track passes,

14

Some of said pieces are wholly within the six rods which, by their charter, the plaintiffs were authorized to take for their roadway. The track passes over all the pieces named in the lists, some parts of them being without the line of six rods. Upon three of these lots, buildings were standing, some portions of which buildings are within, and some portions without the six rods. One of these buildings is, and always has been, since the construction of the road, used for their station-house and passenger depot.

All said estate was acquired by the plaintiffs by purchase from the owners, except the piece designated in .the lists as the Nye place, which was obtained by an appraisal of the commissioners under the plaintiffs' charter.

In those cases where the lots lay wholly within the six rods, they were purchased because the plaintiffs regarded that width necessary to the convenience and safety of their track, and that is the width of the entire line of their road through the state.

Where the lots extend beyond the six rods they were purchased by the plaintiffs because that mode was thought more economical than paying the damages, and because the whole lots could be purchased by the plaintiffs as cheaply, or nearly so, as the six rods would be appraised by commissioners.

The eleven acre piece was a piece of swamp land lying in the north part of the town, through which the plaintiffs first located their road, and was acquired by the plaintiffs by purchase in the same manner as the other pieces. After this purchase, the plaintiffs changed the location of the road, so as not to run through this eleven acres, and this piece has ever since been common and unimproved by the plaintiffs. When purchased, a part of it was necessary to the construction of the plaintiffs' road.

All these pieces of real estate were acquired by the plaintiffs in good faith, because it was more economical for them to do so than to limit themselves to the six rods, and take the land upon the commissioners' appraisal; and not for the purpose or with the intent of acquiring property which should not be subject to taxation.

In making up these lists, the listers appraised such parts of these lots as in their judgment were not necessary for their roadway, or for depot purposes, including in their appraisal a considerable por-

tion of lands within the six rods, and in all cases where the lots extended beyond the six rods, the surplus was included in the lists.

If, upon these facts, the plaintiffs are entitled to recover, the cause is to be referred to assess the damages, under such rules as the court shall establish affecting the plaintiffs' right to recover.

That part of these lots, outside of the six rods limits of the road, was not necessary to the proper use or accommodation of the road, except the town lot, so called, which, for the purposes of this trial, it is conceded was necessary for a depot, and that part inside the six rods limits was necessary for the proper use and accommodation of the road.

Upon this statement of facts, the county court rendered judgment for the defendants. Exceptions by the plaintiffs.

*Roberts & Chittenden* for the plaintiffs.

Section seven of the plaintiffs' charter authorized them to lay out their road six rods wide, and they judged that width necessary. Their determination upon this point is conclusive. If, therefore, the power to tax depends on the necessity of the property for the use of the railroad, the tax upon any part of the six rods strip was illegal, and also that upon the town lot used for depot purposes. The lands without the six rods were acquired in the exercise of a wise economy in obtaining the road-line itself, and may be, therefore, said to have been necessary, in a certain sense, for the construction of the road.

But the plaintiffs are not limited by their charter from taking and holding other lands than those which are necessary for the construction and accommodation of their road, and the true question is, are these lands the property of the plaintiffs? If so, by section seventeen of their charter, they are not taxable. The defendants have treated them as the plaintiffs' property, and set them in the list as such. The right to take and hold lands is incident to the corporate character of the plaintiffs, unless restrained by the charter, either expressly or by implication. So far from being restrained, the power is expressly given, as above stated.

There is no power given to Burlington to tax certain parts, or any part of the plaintiffs' property, whether necessary to their use or not; if they own it at all, it is exempt from taxation.

These points are fully confirmed by the following cases. *Gard-ner* v. *The State*, 12 W. L. Dig. 404, *New Jersey; Inh. of Worces-ter* v. *Western R.*, 4 Met. 564; *Reading R.* v. *Berks County*, 6 Barr; *Wayne County* v. *Del. & H. Canal Co.*, 15 Penn.; 3 Harris 351.

If the lists embraced any lands not subject to taxation, the whole list, in this case, is void, because the illegal is so blended with the legal that it is quite impossible for the court to separate them. *Drew* v. *Davis*, 10 Vt. 506.

*G. F. Edmunds*, for the defendants, argued that the lands which the plaintiffs were authorised, by their charter, to purchase or take by force of law, were only such as were necessary for the construction of their road and the accommodation requisite and appertaining to the same; that this right was limited to lands upon their line of location, and not exceeding six rods in width,—and that, within those limits, their power of acquisition was to be measured by their necessities; that the property exempted from taxes was such only as the company were authorised to acquire; and that the general words used in the charter should be restrained to the subject to which they were intended to apply, which was to lands given to the company, or to such as were necessary to the use of their road; and cited *State* v. *Mansfield*, 3 Zabriskie 510. (14 U. S. Dig. 545.)

The opinion of the court was delivered, at the circuit session in September, 1856, by

ISHAM, J. This action is brought to recover the money which was paid by the plaintiffs in discharge of taxes assessed upon their property by the selectmen of the town of Burlington. The money was paid under protest; and, if the taxes were laid in whole or in part on property exempt from such assessments, the plaintiffs are entitled to recover. The 17th section of the charter of this company provides that, "The stock, property and effects of the com- " pany shall be exempt from all taxes levied by, or under the au- " thority of this state." If full effect is given to that language, it would seem to create an exemption co-extensive with their right to hold property in their corporate capacity. That provision, however, should be construed so as to carry into effect the intention of

the legislature. The plaintiffs, by their charter, are made a body corporate, with power to construct a railroad for the transportation of persons and property, and are authorised to make the necessary surveys, and to lay out their road, not exceeding six rods in width, through the whole length of the line. By the 7th section, the company are authorised " to take possession and use all such lands and real estate as may be necessary *for the construction of the road* and the *accommodation requisite and appertaining to the same,*" and, in case of a disagreement as to the price of the land, the matter is to be determined by commissioners. They may also take and hold such real estate as may be granted or given to them to aid in the construction, maintenance and accommodation of the road. The 17th section, after exempting the property of the company from taxation, provides that the legislature, after the expiration of twenty years from the opening of the road, may purchase of the company the road, and all franchises, property, rights and privileges thereto belonging, on payment of the amount expended in making the same, the expenses of repairs, with all other expenses incurred about the same, and ten per cent interest thereon ; deducting therefrom the sums received from tolls and other sources of profit.

In relation to charters of this character, and the roads constructed under them, we have had occasion heretofore to observe that, though the capital and the income belongs to individuals themselves, and are used for private gain, yet the construction of these roads is regarded as a public work, established not only by public authority, but for public use and benefit. The title of the property is vested in the corporation, but for public use. The property, so far at least as they are authorised to take it by proceedings *in invitum,* and the franchises granted to them, can be used in no other way, and for no other purposes. It was probably this consideration, as well as the additional one, that the amount paid in taxes would increase the sum to be paid by the state in case they should become the purchasers of the road, that induced the legislature to exempt the property from these charges. We are not to understand by this, that all the property of which the company may become the owners, and which they may hold under their charter, will fall within that exemption. There must be some

limit to its operation. It should be confined to that which the company were authorised to take without the consent of the owner, and to which the state would be entitled, on becoming the purchasers of the road. While the company may hold property of that character exempt from taxation, they may at the same time hold, by gift or grant, wood land for fuel, or land on which to erect tenements for those under their employment, and for various other purposes connected with the use of the road, and to which that exemption does not apply. Property of that character is not held in trust for public use. The company are at liberty to dispose of it for other purposes than the use of the road; nor would the state be entitled to become its purchasers on paying its cost. That right would extend only to that property which they were authorised to take in the exercise of the right of eminent domain; and that is the extent to which that exemption should apply. The cases which have been decided on this subject lead to this conclusion. In the case, *State* v. *Commissioners of Mansfield*, 3 Zabriskie 510, it appeared that in the charter of the Camden & Amboy Railroad Company it was provided that " No other tax or impost shall be levied or assessed upon the said company." It was held that the exemption applied only to property which was necessary to effect the purposes of their organization;—POTTS, J., observing that, "the legislature, in exempting the company from all other taxes, only intended to include so much property as was necessary and essential to a railroad and transportation business, such as the corporation was created to construct and carry on; and, that the limitation of that exempting clause must be fixed, where the necessity ends, and the mere convenience begins." In the case, *Railroad* v. *Berks County*, 6 Barr 70, it was held that, as the railroad was exempt from taxation, that property only which was necessary and indispensable to the construction and use of the road was within the exemption. In the case of *Inhabitants of Worcester* v. *The Western R. Corporation*, 4 Met. 564, an assessment was made on the passenger depot, and the freight, car and engine houses in Worcester, standing partly within and partly without the line of the railroad location. The commissioners abated the tax upon all buildings lying within the limits of the road, and confirmed the tax upon all buildings without the limits of the location. CH. J. SHAW, after

observing that the road was a public work, intended for public use, and that, as such, it was exempt, with all its necessary incidents, from taxation, remarked that " the limit of that exemption is to be ascertained by considering the *extent of the public easement* intended to be acquired, and the *franchises granted* to the proprietors, to enable them to accomplish the proposed end." It was also held *that, the extent to which the company are authorised to take land without the consent of the owner, is the extent to which the law regards the land as appropriated to public use.* In relation to property *acquired by purchase*, lying without the limits of the location of the road, the court observed that " such buildings, or other real estate will not be considered as necessarily incident to the railroad and its objects, and therefore will not be exempted from taxation." We think that view of the subject is satisfactory, and carries into effect the intention of the legislature in making that provision. When, therefore, in the charter of this company, the legislature exempted the stock, property and effects of the company from taxation, reference was had, so far as real estate was concerned, to that which they were *authorised to take by proceedings in invitum*, and does not extend to other land, which they may take by grant, and which may or may not be a matter of convenience, or a source of profit.

It appears from this case, that the selectmen in making up the list, and in the assessment of the tax against this company, appraised various lots of land belonging to the company, most of which were without the limits of the six rods which they were authorised to take for the construction of their road. In relation to that property, it is expressly stated in the case that the land was not necessary for the proper use or accommodation of the road, except the town lot, which it was conceded was necessary for a depot. We think, upon the principles which have been stated, the taxes were properly assessed upon that property. It also appears that, in that appraisal, the selectmen included a considerable portion of the six rods included within the line of the railroad location. For that land, as also the town lot, which it is agreed was necessary for a depot, the corporation are not liable to be assessed, nor for any buildings or structures erected thereon, if necessary for the support or convenient use of the road. Whether it would be

liable to taxation if any part of the land included within the six rods were actually used and appropriated to purposes other than the construction, maintenance and accommodation of the road, is not a question arising in the case, as there is nothing stated showing that such use was made of it. To that extent, therefore, we think the taxes were improperly assessed. The recovery in this case, however, must be limited to the money received for the use of the town. The town is not liable for the state, county, or state school taxes, nor where the town collected the money as agents, and have paid over the money as required. *Spear* v. *Braintree*, 24 Vt. 419; *Fairbanks & Co.* v. *Kittredge*, 24 Vt. 10. The result is, that the judgment must be reversed, and the case referred for the assessment of damages, as stipulated by the parties in the case stated.