## ALBANUS EARL *v.* JONAS T. STEVENS.[*]

### *Estoppel by Conduct.*

It is an essential element of an estoppel by conduct, that the party insisting upon it prove affirmatively that he was induced by the other party's conduct to act in reliance upon the fact that the truth was otherwise than now claimed, and that to allow it to be asserted, would operate a substantial injury, or fraud, upon him; thus, the plaintiff in his absence allowed his son to control his farm and trade the stock thereon; the son traded frequently and in his own name; the property in contention was received by the son in such trades, or exchanges, and, as between him and his father, was the father's; no fraud was intended; the attaching creditor knew that the son was thus trading and the referee found that the father must have known it; but failed to find that the creditor relied at all upon the son's ownership of the property in contention as an inducement to give him credit, or, that the son had it in his possession when he traded with the creditor. In an action by the father against the officer who sold the property on an execution in favor of the son's creditor; *Held*, that there was no estoppel, and none even if the son was held out to the world as the owner.

TROVER. Heard on a referee's report, December Term, 1883, POWERS, J., presiding. Judgment for the defendant.

*Heard, August Term, 1884.

The action was for the conversion of one horse and four cows; and the defendant justified as sheriff, having sold the property on an execution in favor of A. D. Robbins against Riley Earl, a son of the plaintiff. The referee found, that, "as between the plaintiff and said Riley, the title to said horse and cows was in the plaintiff"; that the plaintiff in the winter of 1879-80 went to New York to take care of his aged father, and left his farm in Eden in charge of his son Riley, on which farm were three horses, three yearlings, and six sheep, with directions to "trade and exchange the personal property whenever he could see a chance to make by so doing"; that Riley, who was then of age, managed the farm, sold or exchanged the horses, yearlings, and sheep, making the trades in his own name as owner; that on his father's return in the fall all of said property had been traded away, and other like property was on the farm in lieu thereof; and that, in 1881, the plaintiff went again to New York for the same purpose, leaving his property with said Riley, with the same directions as before.

The referee further found, that said Riley traded the stock several times during the season of 1881, doing "a notoriously large business swapping horses,—swapping several times in a day,—sometimes getting a little money as boot money, but oftener receiving cheap watches and other cheap property for the difference, and using the same" in payment of boot money; that in May, 1881, he bought of R. S. Page three of the cows in contention and one other, for which he gave two yearling steers, a heifer, and a lien note secured on the cows for $55, signing the same in his own name; that the steers and heifer were taken from the farm and came from the said sales. In October, 1881, Riley bought of said Robbins a horse, paying towards the same a cow, which he had received on one of his said trades, and giving in his own name a lien on the horse. At this time, Robbins knew of Riley's former trades, or many of them, and supposed he owned the property which he traded, and

that the cow was his, which he received towards the horse. In December, 1881, the said Robbins brought an action against Riley based upon his lien, and attached the horse and the cows in question, three of them being the Page cows. All of this property was on the farm in Eden, which had been taken possession of by the plaintiff prior to the attachment. When the defendant sold the property, Riley owned no horse nor cow, and the plaintiff owned none except the Robbins horse and the cows sued for. Until the trial before the referee the plaintiff made no claim that the property was exempt, though he forbade the sale. At the trial he claimed that the horse and one cow were exempt, and elected the cow not covered by the Page lien. The other facts are sufficiently stated in the 'opinion of the court.

*Brigham & McFarland*, for the defendant.

The plaintiff is estopped to assert his ownership of the property. Big. Est. pp. 468, 475, 500, 510, 513; Thomp. H. & Ex. 822, 823; Kerr Fr. pp. 100, 127, 130; *Hicks* v. *Crane*, 17 Vt. 449; *M. & W. R. R. Co.* v. *Coffrin*, 52 Vt. 17. It is no excuse if the plaintiff's conduct arose from carelessness. *Cady* v. *Owen*, 34 Vt. 598. That Riley was the agent of his father, and claiming to own the Robbins horse, he cannot adopt the contract in part, without adopting the whole. *See* Benj. Sa. 687, 689. If the plaintiff had the right of exemption, he waived it, as he did not claim it until the trial. Thomp. H. & Ex. ss. 820, 823; Kerr Fr. 130. The right must be asserted before sale or it is lost. *Dow* v. *Cheney*, 103 Mass. 181; *Bourne* v. *Merritt*, 22 Vt. 429; *Sumner* v. *Brown*, 34 Vt. 194; *Clapp* v. *Thomas*, 5 Allen, 158.

*J. C. Burke*, for the plaintiff.

The horse and cow were exempt. *George* v. *Bassett*, 54 Vt. 217; 1 Wait Act. & Def. 428. There was no estoppel. Big. Est. pp. 484, 503; 6 Wait Act. & Def. 681; 1 Ib. 281; *George* v. *Bassett, supra ; Foster* v. *McGregor*, 11 Vt. 595.

The opinion of the court was delivered by

Ross, J.   The referee has found that the plaintiff owns the property in contention.   This entitles him to recover unless his conduct in regard to the property has been such, that he is estopped from denying that the property belongs to his son Riley, as regards the attaching creditor, Robbins. It is not found that the plaintiff had ever told Robbins, or any other of his son's creditors, that his son owned the property.   Having occasion to be absent from home, he left certain personal property on his farm in Eden in the care and possession of his son, with direction to trade the same, if he had an opportunity to make some money thereby. The son diligently traded the property thus left in his care, in his own name.   The property in contention was obtained by the son in such trades.   The referee has found that no fraud, nor deceit, was intended by the plaintiff, or by his son; but that, from all the circumstances, the plaintiff must have known that the son was trading the property in his own name.   The attaching creditor, Robbins, knew that the son was thus trading the property on the farm, in his own name.   Conceding, without deciding, that the father, by thus knowing that the son was trading the property left in his care, in his own name, held the son out to the world as the owner of the property, the facts found by the referee still lack one essential element of an estoppel.   It is not found, that Robbins in the sale of the horse, which is the foundation of his claim against the son, relied at all upon the son's ownership of the property on the farm, or upon the son's ownership of the property in contention, as an inducement to the sale, and credit then given to the son.   He took a lien upon the horse sold as security for the payment of the balance of the purchase money.   This inferentially negates a reliance upon the son's ownership of the personal property on his father's farm.   To estop one from declaring the truth, his conduct must have not only been such as would lead the other party to believe that the fact was otherwise

than the truth, but such other party must show affirmatively, that he has acted in reliance upon the fact being otherwise; and that to allow the truth to be asserted would operate as a substantial injury, or fraud, upon him. The attaching creditor has not shown that in trading with the son he relied as a means of payment upon the son's ownership of the property attached. Neither has he shown that the son then had in his care and possession the horse and cow for which alone the plaintiff, before this court, claims to recover. If, at the time of sale of the horse by Robbins to the son, the son did have in his care the horse and cow for which the plaintiff claims to recover, and the other property belonging to the plaintiff in the son's care was the same disclosed by the referee's report, the horse and cow were exempt from attachment and levy of execution by the creditors of the son. Hence they were not the means of giving, and could not give, the son false credit; and it would be preposterous to suppose, that they operated to secure from Robbins credit for the son in the trade for the horse, out of which arose the indebtedness, upon which Robbins caused the horse and cow to be attached.

We think, therefore, that the facts found by the referee fail to establish that the plaintiff is estopped from asserting his title to the horse and cow in contention.

The judgment reversed, and judgment rendered for the plaintiff to recover of the defendant $36.50, the value of the horse and cow, with interest from March 1, 1882, and his costs.