## J. O. ROBINSON v. R. S. MORGAN.

WINDSOR COUNTY, 1892.

Before: ROWELL, TYLER, START, AND THOMPSON, JJ.

*Sale of personal property. Lien for purchase price. Sub-
vendee. Sale on credit.*

1. In the absence of some agreement to the contrary, the vendor of personal property has a lien on the property sold for the purchase price so long as it remains in his possession.

2. And if the sale is upon credit, the lien may be asserted after the expiration of the term of credit, provided the goods are still in the possession of the vendor.

3. Nor is the vendor's right to assert such lien affected by the fact that a portion of the purchase price has been paid.

4. The vendor has the same right in this respect against the sub-vendee as against the vendee, unless he has done something in the premises by which he is estopped.

5. The mere fact that the subvendee has notified the vendor of the sale to him, without any expression of dissent on the part of the vendor, is not enough.

Trover for a car load of clapboards. Plea, the general issue. Trial by jury at the May term, 1891, Ross, Ch. J., presiding. Verdict and judgment for the plaintiff. The defendant excepts. The opinion states the case.

*Fred Arnold* and *J. J. Wilson* for the defendant.

The defendant offered to show that the plaintiff was notified of the re-sale and assented to it. He was entitled to go to the jury upon this question. *Hawes* v. *Watson*, 2 B. & C. 170; *Harnan* v. *Anderson*, 2 Campb. 243; *Stoveld* v.

*Hughs*, 14 East 308; *Cuming* v. *Brown*, 9 East 506; *Eaton* v. *Cook*, 32 Vt. 58; 2 Benj. Sales, § 1,153; *Voorhis* v. *Olmstead*, 66 N. Y. 113; *Hazzard* v. *Fiske*, 83 N. Y. 287; Pars. Cont. 476; 2 Kent 245; *Stubbs* v. *Lund*, 7 Mass. 457; *Rowley* v. *Bigelow*, 12 Pick. 314. See cases cited Benj. Sales, 1,005, K.

*Hunton & Stickney* for the plaintiff.

The contract was entire, and the plaintiff might retain any portion of the property for any part of the purchase price. *Loomis* v. *Wainwright*, 21 Vt. 520, 528; *Phelps* v. *Hubbard*, 51 Vt. 489; Benj. Sales, p. 5 § 44; *Arnold* v. *Carpenter*, 18 Atl. Rep. 174, (R. I.); *Haskell* v. *Rice*, 11 Gray 240; *Milliken* v. *Warren*, 57 Me. 46; *Arnold* v. *Delano*, 4 Cush. 33; *Rowley* v. *Bigelow*, 12 Pick. 313; *Benedict* v. *Shœttle*, 12 Ohio St. 515; *Loeb* v. *Peters*, 63 Ala. 249; *Grout* v. *Hill*, 4 Gray 261; *Babcock* v. *Bonnell*, 80 N. Y. 244, 251; *White* v. *Welsh*, 38 Penn. St. 396, 420; *Hodgson* v. *Loy*, 7 T. R. 440; *Kemp* v. *Falk*, 7 L. R. App. Cas. 573, 582.

The defendant has no greater rights than the original vendee. 2 Benj. Sales, § 1,153, pp. 1,004–5–6; *Ilsley* v. *Stubbs*, 9 Mass. 65; *Craven* v. *Rider*, 6 Taunt. 433; *Newhall* v. *Vargas*, 13 Me. 93; *Gibson* v. *Carruthers*, 8 M. & W. 341; *Dixon* v. *Yates*, 5 B. & Ad. 313; *Tanner* v. *Scovill*, 14 M. & W. 28.

The opinion of the court was delivered by

THOMPSON, J. This is an action of trover for a carload of clapboards. On the first day of July, 1887, William Angier & Co. bought of the plaintiff three carloads of clapboards, two of which were to be paid for in barter, and the other in cash in thirty days. The clapboards were to be delivered by the plaintiff on the cars at Brandon, Vt. July

9, 1887, he delivered one of the loads to be paid for in barter, and October 8, 1887, he delivered the load to be paid for in cash in thirty days. In the summer and fall of 1887 he drew the remaining load from his mill in Rochester to Brandon, and stored the same on the premises of the railroad company, where they remained until they were taken by the defendant in November, 1888, without notice to and against the will of the plaintiff. December 28, 1887, the plaintiff requested Angier & Co. to send a shipping order for this last named carload of clapboards, but it does not appear that they or the defendant then, or at any other time, ever sent such order. March 3, 1888, the defendant bought this load of clapboards of Angier & Co., and paid them for the same. Angier & Co. became insolvent in August or September, 1888, and thereupon the plaintiff at once, and before the removal of the clapboards by the defendant, notified the railroad company not to deliver them unless by plaintiff's order. At the time these clapboards were taken by the defendant the cash carload had not been paid for by Angier & Co., although the thirty days' credit had then expired.

When they were taken by the defendant they were in the possession of the plaintiff. He had never parted with the possession of them. If the contract was so far executory that the title did not pass to Angier & Co. until the delivery of the clapboards by plaintiff on the cars at Brandon, then clearly the taking and conversion by the defendant was unlawful. If, on the contrary, the contract was so far executed that the title to them passed to Angier & Co. without delivery on the cars, yet while they remained in the plaintiff's possession he had the common law vendor's lien on them for the unpaid purchase price of all the clapboards included in the contract, in the event of the purchaser's insolvency. His lien, under the facts reported, was not extinguished by the fact that credit was given for a part of the purchase price.

"A lien for the price is incident to the contract of sale, where there is no stipulation therein to the contrary; because a man is not required to part with his goods until he is paid for them. But *conventio legem vincit;* and when a credit is given by agreement the vendee has a right to the custody and actual possession, on promise to pay at a future time. He may then take the goods away, and into his own actual possession; and if he does so the lien of the vendor is gone, it being a right incident to the possession.'

"But the law, in holding that a vendor who has thus given credit for goods waives his lien for the price, does so on the implied condition, which is that the vendee shall keep his credit good. · If, therefore, before payment the vendee become bankrupt or insolvent, and the vendor still retains the custody of the goods or any part of them; or if the goods are in the hands of a carrier or middleman, on their way to the vendee, and have not yet got into his actual possession, and the vendor, before they do so, can regain his actual possession by a stoppage *in transitu*, then his lien is restored, and he may hold the goods as security for the price." *Arnold* v. *Delano*, 4 Cush. 33; 50 Am. Dec. 754; 1 Pars. Cont. (5th Ed.) 526; 2 Benj. on Sales (4th Am. Ed. by Corbin) § 1,185, note 4. Thus it is seen that the right of stoppage *in transitu* is only an equitable extension or enlargement of the vendor's common law lien for the price, and not a distinct and independent right. *Rowley* v. *Bigelow*, 12 Pick. 306. The stoppage *in transitu* does not rescind the contract, but only restores the vendor's lien, and it can only take place when the property has vested in the vendee, and he is, or becomes, insolvent.

. Although it were true, as stated in defendant's offer of evidence, which was excluded, that a part of the clapboards included in the sale had been paid for in the manner indicated by the offer, at the time Angier & Co. became insolvent, yet that would not affect the plaintiff's right, as against

Angier & Co., to retain the clapboards in question until he was paid for all the clapboards.

The defendant is a subvendee. Unless the plaintiff has done something which estops him from asserting his lien as against the defendant, his rights are the same as they would be were Angier & Co. the defendants. *Craven* v. *Rider*, 6 Taunt. 433 (1 E. C. L. Rep. 690) ; *Haskell* v. *Rice*, 11 Gray 240.

The evidence offered by the defendant on this branch, and excluded, was in substance that defendant bought the clapboards of Angier & Co., and notified the plaintiff thereof while they were solvent, and that subsequent to giving this notice and while they were still solvent the plaintiff repeatedly requested both Angier and the defendant to furnish a shipping order for these clapboards, and inquired of Angier whether he should ship them to defendant's order. This evidence tends to show an acquiescence by the plaintiff in the sale to the defendant, after it was made and came to the knowledge of the plaintiff, but it does not tend to show waiver by him of any of his legal rights in the premises as they existed at the time he first became aware of the fact that the defendant was subvendee. It is not claimed that the plaintiff had any knowledge of the purchase by the defendant until he was notified of it some time after it had been made.

A party invoking the doctrine of equitable estoppel must show that he either did something or omitted to do some act by reason of the alleged conduct of his adversary, which he claims operates as an estoppel, and that he is thereby put to such a disadvantage that it would not be equitable to allow his adversary to assert his legal rights. The evidence offered has no tendency to show that the defendant did or omitted to do anything in the premises by reason of what he offered to prove the plaintiff had said or done, and his case thus lacks an essential element of an estoppel *in pais.*

*Earl* v. *Stevens*, 57 Vt. 474; *Wells* v. *Austin*, 59 Vt. 157; *Gilbert* v. *Vail*, 60 Vt. 261.

The defendant cites and relies upon *Stoveld* v. *Hughes*, 14 East 308, in support of the proposition that the mere subsequent assent by the vendor, while the property remains in his possession, to a subsale without his doing anything more, and without the subvendee's having done anything by reason of such assent, destroys the vendor's lien. The decision in that case is put upon the ground that there was an executed delivery of the property to the subvendee, in which the original vendors, the defendants, participated, and to which they consented, and that by virtue of this consent and delivery the plaintiff, the subvendee, had paid the original vendee before his insolvency, and before the attempt of the defendants to hold the property under an alleged right of stoppage *in transitu*. It is not, therefore, an authority which supports the defendant's contention. He also cites several other English cases, and *Stubbs* v. *Lund*, 7 Mass. 457, *Rowley* v. *Bigelow*, 12 Pick. 314, and *Eaton* v. *Cook*, 32 Vt. 58, in support of the same claim, but they are all distinguishable from the case at bar, and turn upon an entirely different principle than that for which the defendant contends.

We think the evidence offered was properly excluded, and that there was no error in the charge of the court.

*Judgment affirmed.*