CATHERINE BATCHELDER *vs.* BURTON BLAKE and J. E. DWINELL, admr.

October Term, 1897.

Present:  Ross, C. J., Rowell, Tyler, Munson, Start and Thompson, JJ.

*Estoppel—Evidence.*

A father and mother mortgaged their farm to one of their daughters to secure their notes to her for one thousand dollars, payable at their decease, and then conveyed the farm to another daughter upon condition that she pay said notes, taking at the same time from the second daughter a written contract for their support during life and the payment of their debts, including the notes. The second daughter died leaving a will by which she bequeathed to her sister one thousand dollars, to be realized from certain securities, intending that the legacy when paid should be in liquidation of the notes. The sister manifested her willingness that this should be so, and she, as well as the devisee of the farm, expected that her debt would be paid out of the securities and that the farm would be clear; but she never accepted the securities as payment, and when they proved worthless in the hands of the executor she sought a foreclosure of her mortgage against the devisee in possession and the administrator upon the father's estate. *Held*, that there was nothing in these facts to estop her from foreclosing.

*Held* also, that the contract to support the parents was not the one in issue and on trial, and that the oratrix was a competent witness to prove that she had searched for the original and failed to find it.

A mortgage deed of real estate, executed by a married woman, though not executed by her husband, may be admitted as a declaration by her to prove the existence of a contract recited in its condition.

The scrivener may testify that alterations in a deed were made before its execution.

PETITION to foreclose a mortgage. Heard upon pleadings and master's report at the February Term, 1897, Orleans County, before *Taft*, Chancellor. Decree for the petitioner. The defendants appealed.

Exhibit No. 4, referred to in the opinion, was a mortgage deed, dated July 29, 1882, from Mary A. Blake to H. N. Wright and Orpha Wright, the condition of which recited an agreement for the life-support of the mortgagees by the mortgagor. Mrs. Blake was a married woman at the date of the mortgage, but her husband did not join.

*John Young* and *J. P. Lamson* for defendant Blake.

*F. W. Baldwin* and *W. W. Miles* for the petitioner.

TYLER, J. It appears that H. N. Wright and his wife, Orpha Wright, being well advanced in years and desiring to divide their property between their two children, Mary A. Blake and Catherine Batchelder, on October 8, 1879, executed and delivered to their daughter Catherine a mortgage of their farm in Barton, conditioned for the payment of two promissory notes of that date, of $500 each, signed by H. N. Wright and payable to the said Catherine at the decease of the maker and his wife, with interest after the maker's decease, and on the same day they gave a deed of the same farm, with the live stock and farming tools thereon, to their daughter Mary A., conditioned that she should pay the mortgage to her sister Catherine. At the same time Mrs. Blake made a written contract with her father and mother, by which, in consideration of the conveyance to her, she undertook to settle all his outstanding debts and support her father and mother upon the farm during their lives, and at their decease pay Mrs. Batchelder $1,000. After the execution of these papers Mrs. Blake took possession of the real and personal estate conveyed to her which was of the value in all of about $3,000, and held it as her own and supported her father and mother upon the farm until her father died, Aug. 15, 1887, and continued to

support her mother until Mrs. Blake herself died, Dec. 5,
1888, after which Mrs. Wright continued to live on the farm
with her grandson Burton Blake—who held it under his
mother's will—until June, 1892, when Mrs. Batchelder and
her husband, without Burton's consent, removed her from
his house.  In July, 1882, Mrs. Blake mortgaged the farm
to H. N. and Orpha Wright to secure to them the perform-
ance of her contract.  Her husband died in Sept. 1884, and
defendant Dwinell was in May, 1894, appointed adminis-
trator of his estate.  Mrs. Batchelder's husband died after
Feb. 13, 1894.  Mrs. Blake made her will in Aug. 1888, and
her sister's husband, W. C. Batchelder, was the executor.
She then owned two western mortgages amounting to
$1,200, which the master finds she bequeathed in the follow-
ing paragraph in her will:

"I give to my beloved mother, Orpha Wright, the interest
on twelve hundred dollars during the time of her natural
life, and at her decease, I give to my beloved sister,
Catherine H. Batchelder, one thousand dollars of said
twelve hundred dollars, and the balance of said twelve
hundred dollars which shall be left after paying said one
thousand dollars to my said sister, Catherine H. Batchelder,
and after paying the funeral expenses of my mother, the said
Orpha Wright, which said funeral expenses, it is my will
shall be paid out of said twelve hundred dollars, I give to
my beloved sons, Charles H. Blake and Burton Blake, to
be divided equally between them."

She gave the remainder of her estate to her two sons,
including in Burton's share the farm in question.

The master finds that the bequest of $1,000 to the oratrix
was intended by the testatrix, "when paid to the oratrix,"
to be in payment and discharge of the mortgage of Oct. 8,
1879; that the oratrix so understood it and made no
objection to it, and while her husband held the western
notes and mortgage as executor of her sister's will,
manifested a willingness to accept payment of her mortgage

by funds derived from the western securities when collected. But the oratrix did not accept the securities in payment of her mortgage, nor did she ever have the custody or control of them, nor did she enter into any agreement to rely upon them in payment of her debt. The oratrix and the defendant, Burton Blake, for a time assumed that these securities were good and would be paid, that her debt would thereby be paid and that Burton would have the farm clear of all incumbrances. The securities were never collected and proved to be of no value. The defendant Burton recognized the mortgage of the oratrix as an incumbrance upon his farm, and in the years 1893 and 1894 claimed and had an offset to his personal property in his tax inventories.

From the facts reported the master was fully justified in finding that the oratrix's mortgage notes were due and unpaid, and that nothing in her conduct concerning them constituted an equitable estoppel. The report does not show that defendant Blake did or omitted any act in respect to his farm in consequence of the oratrix's expressed reliance upon receiving payment of her mortgage by means of these securities.

It was competent for the oratrix to prove by the scrivener that the erasures and alterations in the mortgage were made before its execution.

Exhibit No. 4 was offered in evidence by the oratrix merely as a declaration by Mrs. Blake that at the time the deed and mortgage were executed by her father and mother, she made a written agreement with them to support them upon the home farm while they lived and pay her father's debts. The contract itself was not in issue and on trial. The oratrix only testified that she had made search for it among her mother's papers and had not been able to find it. For this purpose she was a competent witness. The making of the agreement was shown by other evidence.

*Decree affirmed and cause remanded.*