JOSEPH O. DROUIN v. THE BOSTON & MAINE R. R. Co., ET AL.

May Term, 1902.

Present: ROWELL, C. J., START, WATSON and HASELTON, JJ.

Opinion filed August 21, 1902.

*Railroads—Condemnation proceedings—Regularity of—Title against by adverse possession—Estoppel.*

When a railroad company has taken land by condemnation proceedings and paid the damages awarded therefor by commissioners, according to its charter and the laws of the state, and the owner has accepted the damages and taken no appeal, it is too late after a lapse of nearly fifty years to raise the question of the necessity of the taking.

Objection to the regularity of the condemnation proceedings for the company's failure to furnish the owner with a plan or description of the land taken, as required by law, is waived by accepting payment of the damages therein awarded.

Lands of a railroad contiguous to the center line of the recorded locating survey, lawfully taken for the purposes of its roadway, are within the provisions of V. S. 3745, and cannot be acquired by adverse possession.

This section does not grant a special privilege to a private corporation and is not in contravention of Art. 7, c. 1 of the Constitution of the state.

To estop one, his conduct must not only have been such as would lead the other party to believe the fact was otherwise than it was, but the latter must show affirmatively that he has relied upon the conduct of the former, and been induced thereby to act or refrain from acting.

APPEAL IN CHANCERY.  Heard on a special master's report and defendant's exceptions thereto at the December Term, 1901, Caledonia County, MUNSON, Chancellor, presiding.  Decree dismissing the bill.  The orator appealed.

*May & Simonds* for the orator.

The condemnation proceedings in July 1856 were without lawful authority.  The charter of the Conn. & Pass. Rivers

R. R. Co., had expired, except as to such parts of the road as were then constructed. No. 26, Acts of 1845, s. 3. The report shows that the road was not built opposite the land in question, although the line was laid on paper beyond it.

The line of the road was located in 1846, but in 1854 the company fixed upon a new survey or location. It is on this location that the orator bases his rights, and it is upon this location, apparently, that the condemnation proceedings of 1856 were based. Such proceedings must be in strict compliance with the law. Every requirement of the statute must be observed.

A plan should have been prepared and delivered to the land owner or deposited in the town clerk's office before the commissioners attempted to act. No. 41, Acts of 1849. This prerequisite was not complied with. The award of the commissioners is no evidence of the facts recited therein. The very purpose of the statute would be defeated if the plan was omitted. 120 Mass. 352; 128 *Id.* 391; 16 N. J. Eq. 427; Elliott on Railroads, s. 973.

V. S. 3745 applies only to the roadway of the company. Any other land belonging to it stands like the land of an individual. The term should be given a restricted meaning. Webster defines "roadway" as "the part of the road travelled by carriages."

We insist that the company abandoned all but the 2½ rods strip and it reverted to Andrews and Bancroft, and either passed by the conveyances to the orator, or to their heirs against whom the statute will prevail. 32 Vt. 77; 29 Vt. 39.

No. 41, Acts of 1849, s. 15, does not mean that the company shall be so "scized and possessed" as to prevent one from getting title by adverse possession to all the land except the "roadway." That the railroad company can be disseized is established by *Proprietors etc.* v. *R. R. Co.*, 104 Mass. 1.

The defendants are estopped. The orator and his grantors erected buildings upon the disputed land. The section men knew all about it. The officers of the company ought to have known about it. Silence has been held an estoppel. 71 Vt. 321. Standing by and seeing money expended has been held to produce the same effect. 57 Vt. 268; *Adams* v. *Derby*, 73 Vt. 258; *Stearns* v. *Barre, Id.* 281; 33 Vt. 311; 55 Vt. 438; 177 U. S. 260.

*Crocker* v. *Collins*, 34 Am. St. Rep. 752, closely resembles the case at bar. See also *Terrill* v. *Weymouth*, 37 *Id.* 94; 3 Vt. 542; 50 Vt. 57; 57 Vt. 268; 64 Vt. 522.

V. S. 3745 is unconstitutional. It grants a special privilege to a private corporation. Const. Art. 7, Chap. 1. *Bank* v. *Cooper*, 2 Yerger 599; *State* v. *Ellet*, 47 Ohio St. 90.

....*Young & Young* and *Harry Blodgett* for the defendants.

The condemnation proceedings and payment of the damages gave the Conn. & Pass. Rivers R. R. Co. title to this land. It took, as its charter allowed, six rods in width at this point.

These judicial proceedings were had in 1856, about 46 years ago. After this great lapse of time we submit:

(a) It must be inferred from the above facts appearing in the condemnation proceedings and the finding of the payment and acceptance of the damages, that it was found by the commissioners as a fact, or was conceded by the land owners, that the amount of land condemned and appraised was "indispensable for the construction and maintenance of said railroad."

(b) That this question as to the quantity of land "indispensable for the construction and maintenance of said railroad," and the validity of the condemnation proceedings, can only be raised by the land owners in the condemnation proceedings, or by an appeal from the action of the commissioners.

(c) That it cannot be attacked collaterally, especially after this great lapse of time.

(d) In all collateral attacks which have been made upon such condemnation proceedings it has been held that the determination of the directors as to the amount necessary to be taken was conclusive. *Hatch* v. *Railroad Co.,* 25 Vt. 49; *Hill* v. *Railroad Co.,* 32 Vt. 68; *Eldridge* v. *Smith,* 34 Vt. 484; *Rand* v. *Townsend,* 26 Vt. 670.

The irregularities in the condemnation proceedings, found in the report, are wholly immaterial.

(a) That the railroad company did not deliver to the land owners or deposit in the town clerk's office a plan or description in writing of the land to be taken.

(b) That no plan was ever delivered to either of the land owners.

(c) That the corporation never caused the location of their road northerly from St. Johnsbury station and past the land in dispute to be recorded within two years from the act of incorporation or from the passage of the Act of 1849.

After the lapse of more than forty years, it must be presumed that these preliminary matters were performed to the satisfaction of the land owners, or the land owners would have sought their remedy by appeal. If this is not true, the acceptance by the land owners of the damages awarded is a waiver of all preliminary irregularities. V. S. 3821; *Rand* v. *Townsend, supra.*

We submit that if the general railroad law of 1849 is applicable to the question here involved as to how much land the company might take, then the condemnation proceedings are fully justified and the corporation acquired a good title to the extent of six rods on the west side of the center line as appraised and paid for. Section 12 of No. 41 of the Acts of 1849 provides "every railroad corporation may lay out its road,

not exceeding five rods wide; and *for the purpose of cutting embankments and procuring stone and gravel may take as much more land,* within the limits of its charter, in the manner provided in this chapter, *as may be necessary for the proper construction and security of the road.*"

There is nothing in the report to indicate how much land was then necessary for the proper construction and security of the road, but it sufficiently appears that as the surface of the land then was the taking of this strip six rods in width was for the proper construction and security of the road.

The defendants excepted to the admission of evidence on the question of the necessity for the taking of the land in dispute. It is still insisted that under the charter of the company, the directors were the judges of this matter. *Hill* v. *Railroad Co.,* 32 Vt. 68; *Eldridge* v. *Smith,* 34 Vt. 484; *Hatch* v. *Railroad Co.,* 25 Vt. 49.

The orator cannot establish title by adverse possession. V. S. 3745. The master finds that the land in dispute was included in the condemnation proceedings and therefore it is within the statute. *Railroad Co.* v. *Chaffee,* 71 Vt. 84. It appears from the report that the land was not fenced on the east line and that there was never any visible muniment to mark or locate that line so it is impossible for the court to say that the company ever had notice or any reason to suppose that the orator, or the orator's predecessors in the possession of said premises made claim of ownership to any land covered by the condemnation proceedings.

It is claimed that the defendants are estopped. The orator and his grantors were bound by the notice which the public record afforded. The defendants have an absolute right to rely upon the statute so long as it did nothing to mislead the abuttors. The officers of the company had no notice of the orator's claim. It is not claimed on behalf of the orator that the de--

fendant corporations, or any officer thereof, ever in any way or manner said or did anything which misled the orator or any person in his chain of title as to the westerly limit of the railroad's roadway.

START, J.    The orator asks for a decree removing an alleged cloud from the title to the land in dispute.    The defendants claim title by virtue of the charter of the Connecticut and Passumpsic Rivers Railroad Company, the locating survey, ·dated May 8, 1854, the condemnation of the land for a right of way for its railroad, July 3, 1856, the payment of the award ·of the commissioners to Soloman Andrews and J. P. Bancroft, the then owners of the land, and from the construction and operation of a railroad over the land condemned.    The orator ·claims title under a deed from Andrews and Bancroft to John M. Hancock, dated June 23, 1859, in which the land conveyed is bounded on the east by land of the Connecticut and Passumpsic Rivers Railroad Company; and the ownership of the land in controversy is dependent upon the location of this line.    The ·orator concedes that the defendants are entitled to hold, as against him, a strip of land in front of his lot, extending west from the center line of the locating survey two and one-half rods, and that the land in question is within the boundaries of the land taken by condemnation proceedings; but he contends that the railroad corporation could not and did not lawfully take to exceed two and one-half rods of land each side of the ·center line of its survey, and that his east line is the west line of such limit.    The defendants claim that the corporation could ·and did take a strip of land extending west six rods and east two and one-half rods from the center line.    It is found that, at the time of making the survey in 1854, and the condemnation proceedings in 1856, the character of the surface of the land in dispute was entirely different from what it is at the present time.    It then consisted of a steep point of land, extending

from low, marshy land on the east in a sharp rise toward the west, across the westerly line of the land in dispute to an elevation of from sixty to seventy feet above the marsh. To the north of this piece of land, the marsh extended a long distance. The survey, in going north, pierced this point of land at a point from fifteen to twenty feet, at its greatest height, above the surface of the marsh. The company constructed its road substantially on the line of this survey and in doing so, removed all the soil it conveniently could from the land in dispute to the level of the bed of its road; and most of the soil so removed was used in making the fill across the marsh just north of the land in dispute.

The charter of the Connecticut and Passumpsic Rivers Railroad Company was granted in 1835, and, by its terms, the road was to be constructed, furnished and put in operation within fifteen years; and the company was authorized to construct a single, double or treble railroad track over the land in question, of any suitable width or dimension, to be determined by the corporation, and to enter upon and take possession of and use all such lands and real estate as might be indispensable for the construction and maintenance of its railroad and the accommodations requisite and appertaining thereto. No. 37 of the Acts of 1835, sections 1, 4, 7, 9. Under these provisions, the company was authorized to take so much of Andrews and Bancroft's land as was indispensable for the construction, maintenance and accommodation of its road. Section 12, No. 41 of the Acts of 1849, provides that every railroad corporation may lay out its road not exceeding five rods wide; and, for the purpose of cutting embankments and procuring stone and gravel, may take as much more land, within the limits of its charter, in the manner provided in said act, as may be necessary for the proper construction and security of the road. Section 12 provides, in part, that every railroad corporation may

purchase or otherwise take any lands or material necessary for the purpose of making or securing their railroad. Section 14 provides that no land or material without the limits of the road shall be taken without the permission of the owner thereof, unless the commissioners, on application of the corporation and notice to the owner, shall first prescribe the limits within which land or material shall be so taken as aforesaid. Section 15 provides for condemnation proceedings; section 16 for an appeal; and also provides that no appeal shall be taken by the land owner after accepting the amount of the award. Section 1 provides that all railroad companies that have been or shall hereafter be incorporated under the authority of this state shall have all the powers and privileges, and be subject to all the duties, liabilities and other provisions contained in the act respecting such corporations, so far as the same are consistent with their respective charters. Under sections 12, 13 and 14 of this act, the company could take so much of Andrews and Bancroft's land without the five rod limit and contiguous thereto, for the purposes of its road, as commissioners should adjudge to be necessary for the proper construction and security of the road.

By No. 55 of the Acts of 1843, the act of 1835 was revived, and all the powers, privileges and immunities granted in the original act were re-granted to the Connecticut and Passumpsic Rivers Railroad Company, and the time for completing the road was extended for fifteen years from the passage of the act; and the act also provided that a failure to complete the road within the time limited should not work a forfeiture of any of the privileges or benefits granted by the act, upon such parts of the road as should be completed within the time aforesaid. This enactment had the effect to continue in force the authority and rights granted to the railroad company by its original charter, to construct and put in operation a rail-

road and to take land for that purpose, until October 31, 1858; and, at the time of the condemnation proceedings, the company had a right to take for the purposes of its road so much of the land in controversy as was indispensable for the construction, maintenance and accommodation of the same. The location of the land with reference to the surveyed center of the road, and its character, at the time of the condemnation proceedings, was such that it could be lawfully taken for the construction and security of the road under the charter, or under the act of 1849. The award of the commissioners shows the boundaries of the land, that it was taken for the purposes of the road, that the company and land owners were not able to agree on the amount of damages therefor, and that the commissioners, on application, notice and hearing, appraised the same; and the case shows that, thereupon, their award was recorded in the town clerk's office and the damages paid by the company and accepted by the land owners.

Section 15 of the act last cited provides, that, upon the payment by a railroad company of the damages determined upon by the commissioners, with the costs and charges thereupon accruing, the company shall be deemed to be seised and possessed of all such lands and other property as shall have been appraised by the commissioners. The condemnation proceedings, payment of the award, and construction of the road were after the passage of this act, and in so far as appears, were in conformity to its provisions and to the charter, and within the extended time for the completion of the road. Under these circumstances and conditions, and in view of the enactments before cited, and the lapse of time, it will be presumed, if necessary, that it was conceded or adjudged, under the provisions of the charter, or of the act of 1849, that the land was indispensable or necessary for the construction, maintenance, security and convenience of the road. The

company having taken the land, and, on notice and hearing, had the same appraised by commissioners, pursuant to the provisions of its charter and the act of 1849, from which no appeal was taken, and the award of the commissioners having been paid by the company and accepted by the land owners, it is too late, after the lapse of nearly fifty years, for the orator to be heard upon the question of the necessity for the taking.

The orator further contends that the condemnation proceedings are void, because the company did not cause the location of its road to be recorded in the town clerk's office, and did not, ten days before the appraisal, furnish the land owners a plan or description of the land taken, as is required by sections 17 and 33 of No. 41 of the Acts of 1849. These objections are not sustained. The location of the road was recorded in the town clerk's office in 1854, and before the condemnation proceedings; and it does not appear whether a plan or description of the land taken was furnished to the land owners before the appraisal. If the provisions of the act of 1849, are, within the meaning of section 1 of the act, consistent with the defendant's charter, and were not complied with, the failure to do so should have been urged as objections to the condemnation proceedings before the commissioners, and before accepting payment of the award of damages. By not seasonably urging these objections, and accepting payment of the award, the right to do so was waived; and the orator cannot now be heard upon the question of the regularity of the proceedings in these respects. *Rand* v. *Townshend*, 26 Vt. 670. We therefore hold that, by the taking of the land, the payment and acceptance of the land damages awarded by the commissioners, and the construction and operation of the road, the railroad company became seised and possessed of the land in controversy for the purposes of its railroad. *Hill*

v. *Western Vermont R. R. Co.,* 32 Vt. 68; *Eldridge* v. *Smith,* 34 Vt. 484.

The orator further insists that he has acquired title to the land in dispute by adverse possession, and contends that the same is now within the limits of the defendants' roadway, within the meaning of No. 27 of the Acts of 1855, now found in V. S. 3745, which provides that no person shall acquire title to lands belonging to a railroad corporation, where such lands lie within the limits of the roadway of such corporation, as recorded in the town clerk's office, by reason of adverse possession. "Roadway," within the meaning of this enactment, includes such lands taken by the corporation, contiguous to the center line of its road, as shown by the record in the town clerk's office, as the corporation could lawfully take for the purposes of its roadway by condemnation proceedings. *Rutland Railroad Co.* v. *Chaffee,* 71 Vt. 84, 42 Atl. 984; *Vermont Central Railroad Co.* v. *Burlington,* 28 Vt. 193. We have seen that the corporation could take the land by condemnation proceedings under its charter, or the act of 1849, for the purposes of its roadway; that the land is contiguous to the center line of the locating survey, as recorded in the town clerk's office; and that it is within the boundaries of the land taken by condemnation proceedings, as shown by the award of the commissioners, which is recorded in the town clerk's office where the land is situate. It is therefore considered that the record in the town clerk's office shows the limit of the roadway opposite the orator's lot, within the meaning of the statute; that the land in dispute is within that limit; and that, by reason of the statute, the orator has not acquired title to the land, as against the defendants, by adverse possession. The case of *Rutland Railroad Co.* v. *Chaffee,* before cited, was an action of ejectment for land within

the limits of the survey of the plaintiff's road that had been taken by condemnation proceedings in 1848. It did not appear that the plaintiff company ever occupied any part of the land which was outside the railroad track; and it was held that there was no abandonment of such land by the plaintiff, and that the defendant could not acquire title, as against the plaintiff, by adverse possession.

It is further contended by the orator that the act of 1855 is in contravention of article 7, chapter 1, of the Constitution of Vermont, in that it undertakes to grant a special privilege to a private corporation. This contention is not sustained. The act excepts land owned by a railroad corporation within the limits of its roadway, as V. S. 3506 does land within the limits of a highway, and V. S. 1223 lands given, granted, sequestered or appropriated to public, pious or charitable uses, from the operation of the statute of limitations, because of the public use to which it is appropriated. The exception is not a grant of a privilege to a private corporation, but an exception of land set apart for a public use from the operation of the statute, and is within the range of legislative authority. *Town School District of Brattleboro* v. *School District No. 2 of Brattleboro,* 72 Vt. 451, 48 Atl. 697; *University of Vermont* v. *Reynolds,* 3 Vt. 542, 23 Am. Dec. 234; *Thorp* v. *Rutland & Burlington Railroad Co.,* 27 Vt. 140, 62 Am. Dec. 625; *Colton & Moore* v. *City of Montpelier,* 71 Vt. 413, 45 Atl. 1039. While the title to land taken by a railroad corporation by condemnation proceedings for the purposes of its roadway is vested in the corporation for certain purposes, it is private property only in a qualified sense. *Sharpless* v. *Mayor of Philadelphia,* 21 Penn. St. 147, 59 Am. Dec. 759; *Beekman* v. *Saratoga and Schenectady Railroad Co.,* 3 Paige Ch. 45, 22 Am. Dec. 679; *Penn. Mutual Life Ins. Co.* v.

*Heiss,* 141 Ill. 35, 33 Am. St. Rep. 273; *Vermont Central Railroad Co.* v. *Burlington,* 28 Vt. 193.

The defendants are not estopped from claiming title to the land in dispute. The essential elements of an estoppel are not found. The boundaries of the land were easily ascertainable from an examination of the records in the town clerk's office, and a measurement from the center line of the road. It does not appear that any party or purchaser in the orator's chain of title ever took the trouble to do this, or to make any inquiries of the officials of the railroad companies. No fences or other erections were made by either of the defendants to mark the west boundary of the railroad land, that were calculated to mislead the orator or any of the grantees in his chain of title; nor is there any claim or finding that any of the officials of the companies, or any one in their behalf, at any time said or did any thing which misled the orator or any person under whom he claims. It is not found that any of the officials of the companies knew that the erections were on railroad land, nor that they were negligent in not knowing. It is found that the section men knew of the occupancy of the land, but it is not found that they knew of the erections before they were completed, nor that they knew whose land they were on. There are no facts or circumstances found from which we can hold that the officials of the companies remained silent at any time when they were bound to speak, nor from which it can be held that the orator, or any of those under whom he claims, did or omitted to do anything in reliance upon any sayings, acts or omissions of the officials of the companies. Under these circumstances, the orator is not in a situation to invoke the doctrine of estoppel. To estop one from declaring the truth, his conduct must not only have been such as would lead the other party to believe that the fact was otherwise than the truth, but such other party must show af-

firmatively that he has relied upon the conduct of the party against whom he invokes the doctrine of estoppel, and been induced by it to act or refrain from doing so. *Clement* v. *Gould,* 61 Vt. 573, 18 Atl. 453; *Robinson* v. *Morgan,* 65 Vt. 37, 25 Atl. 899; *Wells* v. *Austin,* 59 Vt. 157, 10 Atl. 405; *Gilbert* v. *Vail,* 60 Vt. 261, 14 Atl. 542; *Earl* v. *Stevens,* 57 Vt. 474; *Batchelder* v. *Blake & Dwinell,* 70 Vt. 197, 40 Atl. 34; *Kendall* v. *Hathaway,* 64 Vt. 522, 24 Atl. 1118. The orator's case is one of ordinary adverse possession, and to presume a grant, or to hold that the defendants are estopped from asserting their title to the land, would, in effect, nullify the statute which excepts such lands from the operation of the statute of limitations.

*Decree affirmed, and cause remanded.*